# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3212

_____

Rain & Hail Insurance Service, Inc.;　*
Rain & Hail, L.L.C.,　*
　*
　　　Appellants,　*
　* Appeal from the United States
　　v.　* District Court for the
　* Southern District of Iowa.
Federal Crop Insurance Corporation;　*
Risk Management Agency,　*
　*
　　　Appellees.　*

_____

Submitted: May 13, 2005
　　Filed: October 19, 2005

_____

Before ARNOLD, LAY, and MURPHY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

　　　Rain and Hail Insurance Service, Inc. and Rain and Hail, L.L.C. (collectively referred to as Rain and Hail) appeal the district court's order affirming the denial by the United States Department of Agriculture's Board of Contract Appeals (AGBCA) of reinsurance for a state court judgment against Rain and Hail. We affirm in part and reverse in part.

I.

Rain and Hail issues multi-peril crop insurance (MPCI) policies, the indemnity payments on which the Federal Crop Insurance Corporation (FCIC) reinsures through a standard reinsurance agreement (SRA). The state court judgment for which Rain and Hail seeks partial reimbursement arose out of claims for breach of contract and misrepresentation with respect to one of its MPCI policies; the judgment required Rain and Hail to pay compensatory and punitive damages to its insured.

The SRA that applies to the MPCI policy implicated by the judgment excludes punitive and consequential damages from the definition of "ultimate net loss," precluding reinsurance on such damages. The MPCI policy itself incorporates regulations promulgated pursuant to the Federal Crop Insurance Act (FCIA), *see* 7 U.S.C. §§ 1501-1524, including a regulation that prohibits states from levying "judgments, punitive damages, [or] compensatory damages ... against companies ... arising out of [their] actions or inactions ... authorized or required under the [FCIA], the regulations, any contract or agreement authorized by the [FCIA] or by regulations, or procedures issued by the [FCIC]." 7 C.F.R. § 400.352(b)(4); *Rain & Hail Ins. Serv., Inc.*, 03-2 BCA (CCH) ¶ 32,287, at 159,758-59 (June 25, 2003).

In addition, the FCIC issued a Manager's Bulletin, which the parties agree was in effect at all times relevant to this case. The Bulletin stated that the FCIC "may" pay "reasonable attorney fees and litigation expenses" and "may pay approved judgments over and above the indemnity due as provided by the SRA" when certain conditions, which the AGBCA found Rain and Hail to have met, are satisfied. MGR-93-020 (rescinded 1998); *Rain & Hail Ins.*, 03-2 BCA at 159,759-61. Those conditions required that the litigation "involve an attack on FCIC-approved program procedures, regulations and/or crop policies [and] ... the probability of a court ruling which may set legal precedent detrimental to the crop insurance program." MGR-93-020. Although the Manager's Bulletin neither amends the SRA nor has the legal effect of a regulation, the AGBCA has held that the Bulletin affects the SRA by

-2-

"provid[ing] an incentive for [insurance companies] to participate in certain litigation" and thereby vests "enforceable rights" in companies that "base litigation decisions on [the Bulletin]." *Rain & Hail Ins. Serv., Inc.*, 97-2 BCA (CCH) ¶ 29,111, at 144,860-61 (June 27, 1997).

## II.

Rain and Hail contends that the AGBCA erred by not interpreting the Manager's Bulletin as entitling Rain and Hail to reimbursement for the damages that the state court levied against it. Reading the Manager's Bulletin in light of 7 C.F.R. § 400.352 (the regulation forbidding certain state court judgments that was incorporated into the MPCI policy), the AGBCA held that the "approved judgments" that the Manager's Bulletin permitted the FCIC to pay did not include judgments for "damages which were, [under § 400.352], specifically excluded from being imposed on either FCIC or a company reinsured by it." *Rain & Hail Ins.*, 03-2 BCA at 159,762. The AGBCA concluded that, because § 400.352 makes state court judgments such as the one at issue here illegal, *cf. Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984), the FCIC did not intend, and Rain and Hail did not expect, the Manager's Bulletin to provide reimbursement for such judgments. *Rain & Hail Ins.*, 03-2 BCA at 159,762.

Before reviewing the AGBCA's interpretation of the Manager's Bulletin, we must decide what deference we owe to the AGBCA's construction of it. When the parties contest the meaning of an agency's regulation and when that regulation is ambiguous, the agency's interpretation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotations omitted); *see Christensen v. Harris County*, 529 U.S. 576, 588 (2000). The Manager's Bulletin, however, is not a regulation and does not otherwise carry the force of law: It is not the product of "a formal adjudication or notice-and-comment rulemaking," *id.* at 587, and the FCIA "give[s] no indication that Congress meant to delegate authority to" the FCIC to issue Bulletins "with the force of law,"

-3-

*United States v. Mead Corp.*, 533 U.S. 218, 231-32 (2001). *Cf.* 7 C.F.R. § 400.701. Even so, we think that the reasons for deferring to an agency's interpretation of its regulations apply equally to the AGBCA's interpretation of the Manager's Bulletin: Because the AGBCA possesses a "unique expertise" in the "complex ... circumstances" of reinsuring MPCI policies, "we presume that the power authoritatively to interpret" such FCIC pronouncements as the Manager's Bulletin "is a component of the [AGBCA's] delegated lawmaking powers." *See Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 151 (1991). To be clear, we do not hold that the Manager's Bulletin itself is worthy of the same deference as a regulation: Rain and Hail does not challenge the Bulletin; rather, it disputes the meaning that the AGBCA attributed to it.

The Manager's Bulletin does not define the phrase "approved judgments," for which the FCIC may reimburse insurers, and the phrase itself lacks meaning apart from the FCIC's or the AGBCA's definition of "approved." We therefore defer to the AGBCA's interpretation unless plainly erroneous. We conclude that the AGBCA reasonably determined that the FCIC did not intend for the Bulletin to undo one of its regulations by allowing reimbursement of damages that § 400.352(b)(4) bars states from imposing on insurers and, thereby, on the FCIC. The AGBCA's interpretation of the Manager's Bulletin is therefore not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), especially in view of the substantial deference we give to the AGBCA in this circumstance. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 377 (1998); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

Rain and Hail asserts that the AGBCA's decision in a prior case, in which the AGBCA ordered the FCIC to reimburse Rain and Hail for the litigation costs it incurred in defending against the state court judgment for which Rain and Hail now seeks indemnification, demonstrates that the AGBCA's decision below was arbitrary and capricious. We disagree. First, a reinsured company's litigation costs are outside

the scope of § 400.352, and the FCIC could have intended the Manager's Bulletin to encompass litigation costs for defending state law causes of action that the FCIA and its regulations preempt, even though the FCIC did not intend the Bulletin to cover reimbursement for judgments that offend § 400.352. Second, the Manager's Bulletin limits judgments reimbursable under the Bulletin to those that are "approved"; no such limitation applies to litigation costs. Thus the language of the Bulletin suggests that the category of judgments that the FCIC will indemnify is not identical to the category of reimbursable litigation costs. Finally, the FCIC issued the Manager's Bulletin to encourage insurers to litigate vigorously in cases in which the FCIC has an interest as a policymaker or reinsurer. *See Rain & Hail Ins.*, 97-2 BCA at 144,860-61. Increasing the funds at the insurers' disposal for attorney's fees provides such incentives to insurers. But indemnifying insurers for every judgment entered against them in cases in which the FCIC also had an interest would lead to a perverse result: Insurers would have less incentive to defend vigorously, since they would not internalize the full cost of judgments against them. In sum, the AGBCA reasonably treated Rain and Hail's claim for litigation costs differently from its claim for judgment damages.

### III.

Finally, Rain and Hail contends, in the alternative, that contractual damages, interest payments, and court costs that are not reimbursable under the AGBCA's interpretation of the Manager's Bulletin do fall within the SRA's indemnity provisions, an argument that the AGBCA rejected. In reviewing an agency's interpretation of a contract, we ask whether the interpretation was arbitrary or capricious. *See Nesseim v. Mail Handlers Benefit Plan*, 995 F.2d 804, 806-07 (8th Cir. 1993).

Under the SRA, the FCIC agreed to indemnify Rain and Hail for a portion of its "ultimate net loss." The AGBCA concluded that "the SRA unambiguously excludes" punitive and compensatory damages "from any calculation of ultimate net

loss," thereby barring reinsurance under the SRA on the state court judgment against Rain and Hail. *Rain & Hail Ins.*, 03-2 BCA at 159,760. The SRA, however, unambiguously defines "ultimate net loss" to include "the sum paid by [Rain and Hail] ... in satisfaction of any judgement rendered on account of" any eligible crop insurance contract, except for "any punitive or *consequential* damages" (emphasis added). Thus the AGBCA simply misread the SRA's definition of ultimate net loss, and in doing so, it acted arbitrarily and capriciously. Although the definition of ultimate net loss excludes punitive and consequential damages, it does not exclude all compensatory damages (of which consequential damages are merely one type). Consequential damages are damages that "do not flow directly and immediately from an injurious act but ... result indirectly from the act," while compensatory damages are broader, comprehending all damages necessary to make the injured party whole. *See* Black's Law Dictionary (8th ed. 2004); *see also Restatement of Contracts* § 329 cmt. f; U.C.C. § 2-710(2).

The AGBCA's error in interpreting the SRA would be harmless if the compensatory damages assessed against Rain and Hail were consequential damages. Rain and Hail argues in its brief, however, that it is entitled under the SRA "to reinsurance on" $14,000 in contractual damages. In the state trial, the jury entered $14,000 in the blank in the verdict form labeled "compensatory damages" and separately awarded an amount for what it termed "mental anguish." At the state trial, all of the evidence regarding compensatory damages (other than damages for mental anguish) went to the value of the insurance claim that Rain and Hail had refused to pay and the interest that accrued on that claim, the combination of which totaled nearly $14,000. Thus we conclude that these damages resulted not as a "consequence" of Rain and Hail's breach, as the law uses that term, but rather from the breach itself; in other words, these compensatory damages were not of the consequential variety. Given the state of the record, any contrary finding would be arbitrary or capricious. *See* 5 U.S.C. § 706. (We need not categorize the damages for mental anguish because the parties agree that they are not covered by the SRA.)

-6-

Characterizing $14,000 of the state court judgment as non-consequential compensatory damages is not the end of the matter, however. According to uncontroverted evidence introduced at the state trial, of the $14,000 in damages that resulted from Rain and Hail's breach of contract, $11,243.52 was the insured loss under the MPCI, and the remainder was interest that accrued on that amount between the date of the loss and the state court judgment. The insured loss is straightforward ultimate net loss, and therefore the FCIC through the SRA reinsured Rain and Hail for a portion of that amount.

Pre-judgment interest, however, constitutes ultimate net loss only if certain additional conditions set out in the definition of ultimate net loss are satisfied. (The interest must have "resulted from [Rain and Hail's] substantial compliance with FCIC procedures or instructions in the handling of the claim ... of the insured," or Rain and Hail must have complied "with accepted loss adjustment procedures." Additionally, "the award of such interest" must not have "involve[d] negligence or culpability on the part of" Rain and Hail.) On the record before us, we cannot say that the evidence so manifestly points to some particular outcome that any contrary conclusion would be arbitrary or capricious. We therefore remand to the district court with instructions to remand to the AGBCA to decide whether the pre-judgment interest is ultimate net loss, and to calculate the portion of the total ultimate net loss (the sum of the insured loss ($11,243.52) and, if the pre-judgment interest is found to be ultimate net loss, such interest) for which the FCIC must reimburse Rain and Hail under the SRA. On remand, the AGBCA also must determine the post-judgment interest to which Rain and Hail is entitled on the reinsured amount under § V.C.1 of the SRA. *See Rain & Hail Ins. Serv., Inc.*, 99-1 BCA (CCH) ¶ 30,218, at 149,501-02 (Jan. 22, 1999).

Rain and Hail additionally seeks post-judgment interest on the mental anguish and punitive damages awarded in the state court proceeding and court costs assessed in connection with that proceeding. Although Rain and Hail interprets ultimate net loss to include post-judgment interest, interest payments that constitute ultimate net

loss are limited, according to the definition set out in the SRA, to those "contained in a final judgement against [Rain and Hail] by a court of competent jurisdiction." Because post-judgment interest is necessarily not "contained in a final judgement," it cannot be ultimate net loss. Further, both Rain and Hail and the government agree that the SRA does not reinsure damages for mental anguish or punitive damages, and Rain and Hail may not smuggle in through the back door interest that accrued on damages that are not themselves reinsured. The SRA does require the FCIC to pay interest when "the FCIC breaches its obligation to make a timely payment" on a valid, underlying claim, *see Rain & Hail Ins. Serv., Inc.*, 99-1 BCA at 149, 501-02, but here the parties agree that the SRA did not provide Rain and Hail with a valid claim for the underlying mental anguish and punitive damages.

As for the court costs, they were part of the final judgment against Rain and Hail. Because the same requirements that apply to reinsurance on pre-judgment interest also govern court costs contained in a final judgment, if the AGBCA determines on remand that Rain and Hail has satisfied those conditions, Rain and Hail is entitled to reinsurance on its court costs.

## IV.

We reverse the AGBCA's denial of reinsurance on the compensatory damages of $11,243.52 levied against Rain and Hail and vacate the AGBCA's denial of reinsurance on Rain and Hail's court costs and on pre-judgment interest that accrued on the $11,243.52 award. We remand to the district court with directions to remand to the AGBCA for further proceedings consistent with this opinion.

_____