**NEW CONCEPT CONFINEMENT TECHNOLOGY FEEDERS, INC., Appellant,**

v.

**Dr. R.D. KUECKER, Respondent,**

**Dr. R.J. Diemer, et al., Defendants.**

**No. CX–84–1634.**

Court of Appeals of Minnesota.

March 19, 1985.

Review Denied May 31, 1985.

Paul A. Skjervold, Skjervold Law Office, Shorewood, for appellant.

John M. Sheran, Farrish, Johnson, Maschka & Hottinger, Mankato, for respondents.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant New Concept Confinement Technology Feeders, Inc., sued respondents, a group of veterinarians doing business as Cottonwood Veterinarian Clinic. The complaint alleged respondents tortiously interfered with contractual relations between appellant and its customers by filing an invalid veterinarian's lien and by sending letters notifying customers of the lien. The trial court granted summary judgment in favor of respondents. We affirm.

## FACTS

Darrell Nicholson operated a cattle feeding operation called Tracy Cattle Feeders. Tracy Cattle contracted with cattle owners to take possession of cattle, provide veterinary services, feeding, and assistance with sale of the cattle. In December 1982, Nicholson experienced financial difficulties and closed Tracy Cattle.

A group of investors formed the appellant corporation, The New Concept Confinement Technology Feeders, Inc., purchased Nicholson's cattle feeding business, and started its own custom cattle feeding operation. Under the agreement, Nicholson remained liable for all outstanding debts and retained a right to all accounts receivable. Approximately 1,500 cattle remained on the farms from Tracy Cattle when appellant commenced operations.

Before this change in ownership, respondents provided a broad range of veterinary

services to the cattle maintained by Tracy Cattle. These services and supplies were valued at $13,075.03. Respondents made numerous unsuccessful efforts to collect the outstanding debt from Nicholson.

On January 21, 1983, respondents filed a veterinarian lien against the cattle maintained at the Tracy Cattle lot. The lien statement was signed by one respondent and specified the services and supplies were: (1) provided to Tracy Cattle by the lien claimant Cottonwood Veterinary Clinic; (2) rendered to yearling feedlot beef animals; (3) continuous from July 17, 1982 to December 2, 1982; (4) provided at the request of manager Arden Williams; (5) supplied in the Northwest Quarter of Section 34, Township 107, Range 37, Cottonwood County, Minnesota; and (6) valued at $13,075.03.

Respondents also mailed letters containing notice of the lien to numerous parties: Caldwell, a cattle buyer; Arden Williams, the manager for Tracy Cattle and appellant; appellant's counsel; Nicholson; a cattle auction market; and three individuals who respondents believed owned cattle at the Tracy Cattle lots within the lien claim period. Appellant was not named in the lien or the letters, and respondents do not claim appellant is liable for the outstanding veterinary bill.

In February 1983, appellant sued respondents claiming they tortiously interfered with appellant's cattle feeding contracts by filing a defective lien and notifying numerous parties of its contents. Appellant requested removal of the lien and damages of $1,449,683.12. Respondents moved for summary judgment, which the trial court granted.

## ISSUES

1. Was respondents' veterinarian lien defective?

2. Did the trial court properly enter summary judgment against appellant?

## ANALYSIS

### I.

Appellant claims the veterinarian lien filed by respondents was defective because it failed to comply with the applicable veterinary lien statute. *See* Minn.Stat. § 514.-92 (Supp.1983). Lien statutes, however, are remedial in nature and have been liberally construed to do substantial justice between parties. *See Krause v. Merickel,* 344 N.W.2d 398, 402 (Minn.1984). Minn. Stat. § 514.74 (1982) provides:

> *In no case shall the liens given by this chapter be affected by any inaccuracy in the particulars of the lien statement;* but, as against all persons except the owner of the property, the lien claimant shall be concluded by the dates therein given, showing the first and last items of his account.

*Id.* (emphasis added)

Respondents' lien statement substantially complies with Minn.Stat. § 514.-92. Any inaccuracies or ambiguities do not invalidate the lien in light of the curative provision in Minn.Stat. § 514.74. The trial court properly dismissed appellant's claim that respondents' veterinarian lien was defective and should be removed.

### II.

In *Grondahl v. Bulluck,* 318 N.W.2d 240 (Minn.1982), the supreme court defined the appropriateness of summary judgment and the standard of review on appeal.

> A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. The district court must view the evidence in the light most favorable to the nonmoving party, and this court on appeal must view the evidence most favorably to the one against whom the motion was granted.

*Id.* at 242 (citations omitted).

The Minnesota Supreme Court has summarized the elements of a wrongful interference with contractual relations action.

> There are five elements to this tort: (1) the existence of a contract; (2) the al-

leged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. The burden of proving sufficient justification for interference is upon the defendant.

*Furley Sales and Associates, Inc. v. North American Automotive Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn.1982).

Respondents claim there is no genuine issue of material fact concerning respondents' justification in filing the lien because the statutory right to file a veterinary lien is superior to appellant's cause of action. The trial court acknowledged this argument stating:

> A creditor has a legal right to invoke lien provisions of the law to secure and compel payment of a just debt. Although defendants were under no legal obligation to advise the owners of the cattle, and others who may purchase or otherwise deal with the cattle, of their lien, they had a legal right to take reasonable action to protect the property to which their lien had or might attach so that any further dealings with this movable personal property would be made with knowledge of defendants' claims. This knowledge would tend to prevent the loss of the cattle through sales or other transfers so as to defeat defendants' lien. Because the lien was and is a public record and notice to the world of the claims of defendants, it is not unlawful to give actual and reasonable notice to persons who, although having statutory notice, may not have actual notice of the lien and especially those who have or subsequently have an interest in the cattle.

In *Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26 (Minn.1982), the supreme court confronted a similar claim of justification. In *Langeland,* landowners sued a bank, the bank's attorney, and a junior judgment creditor claiming they lost their right to redeem their farm from foreclosure due to the tortious conduct of the defendants. The trial court granted partial summary judgment dismissing the land-owner's claim for tortious interference with contractual relations. On appeal, the supreme court affirmed the dismissal stating:

> The general rule is that one has a right to be secure in his contracts and to pursue his business free from the interference of others. A defendant may avoid liability, however, by showing that his actions were justified by a lawful object that he had a right to pursue. * * * [T]he Langelands owed Welcome-Odin a debt that it was entitled to collect, and the redemption of real property is an entirely legal method of collecting a debt. Since Krahmer and Welcome-Odin acted in furtherance of a superior legal right, the Langelands have no claim against them for wrongful interference.

*Id.* at 32–33 (citations omitted).

█ In this matter, respondents had lawful justification to pursue the debt owed by Tracy Cattle. The filing of the lien and sending letters containing notice of the lien to parties who may have been affected by the lien was a reasonable and legal method for collection and protection of the debt. The trial court did not err by entering summary judgment against appellant's cause of action for tortious interference with contractual relations.

### DECISION

The trial court properly entered summary judgment in favor of respondents.

Affirmed.