2008 ND 12

**Earl R. VAN SICKLE and Harold R. Van Sickle, Plaintiffs and Appellants**

v.

**HALLMARK & ASSOCIATES, INC., Frank Celeste, William R. Austin, Phoenix Energy, Bobby Lankford and Earskine Williams, collectively known as "Interest Holders" NEWCO, and their successors in interest, Missouri Breaks, LLC, Defendants and Appellees.**

No. 20070154.

Supreme Court of North Dakota.

Jan. 22, 2008.

Robert S. Rau (argued), Bosard, McCutcheon & Rau, Ltd., Minot, N.D., and Max D. Rosenberg (on brief), Fargo, N.D., for plaintiffs and appellants.

Jon R. Brakke, Vogel Law Firm, Fargo, N.D., for defendants and appellees.

CROTHERS, Justice.

[¶ 1] Earl and Harold Van Sickle appeal from a summary judgment dismissing their action against Hallmark & Assoc., Inc., Frank Celeste, William R. Austin, Phoenix Energy, Bobby Lankford, and Earskine Williams, collectively referred to as "Interest Holders"; NEWCO, and their successors in interest, Missouri Breaks, LLC, for breach of contract, conversion, and tortious interference. We conclude the district court made a legal error in concluding it did not have jurisdiction to decide whether the Van Sickles are entitled to payment for pre-confirmation royalties. We affirm the court's dismissal of the conversion, tortious interference, and post-bankruptcy royalties claims, but re-

verse the court's decision on the pre-confirmation royalties claim, and remand for further proceedings consistent with this opinion.

I

[¶ 2] The Van Sickles each own a .0013125 percent royalty interest in oil and gas produced by the Missouri Breaks Unit No. 1 oil and gas well located in McKenzie County. The well is operated under the terms of four leases. Comanche Oil Company was the original lessee, but in September 1997, Comanche Oil's interest was assigned to Athens/Alpha Gas Corporation. Athens/Alpha subsequently conveyed approximately a 50 percent interest in the well to the Interest Holders, and continued operating the well.

[¶ 3] In 2002, Athens/Alpha filed for Chapter 11 bankruptcy. A reorganization plan was confirmed by the bankruptcy court on May 5, 2005. The reorganization plan provided for the formation of Missouri Breaks, LLC, and Athens/Alpha's working interest in the well was transferred to Missouri Breaks. After confirmation of the reorganization plan, Missouri Breaks began operating the well and was required to pay Athens/Alpha's creditors using the revenue from its portion of the working interest under the terms of the reorganization plan. To be eligible to receive payments from Missouri Breaks under the terms of the reorganization plan, Athens/Alpha's creditors had to file a claim in the bankruptcy proceeding, or the confirmed reorganization plan or a final order of the bankruptcy court had to specifically allow their claim. The Van Sickles did not receive notice of the bankruptcy proceeding by mail, were not listed as scheduled creditors, and did not file a claim.

[¶ 4] In October 2006, the Van Sickles sued the Interest Holders and Missouri Breaks for breach of contract, conversion, and intentional tortious interference, alleging the defendants did not pay royalties after they began operating the well in January 2005. The complaint was later amended to include claims against these same defendants for royalties on oil and gas produced before the reorganization plan was confirmed. Missouri Breaks started sending the Van Sickles royalty payments for oil and gas produced after it began operating the well.

[¶ 5] The defendants moved for summary judgment arguing they are not responsible for any pre-confirmation royalties, any claims for pre-confirmation royalties were discharged in the bankruptcy proceedings, and all post-bankruptcy royalties have been paid. The Van Sickles moved for partial summary judgment on the issue of liability for pre-confirmation royalties under the breach of contract, conversion, and tortious interference claims.

[¶ 6] After a hearing, the district court granted the defendants' motion for summary judgment and denied the Van Sickles' motion. The court ruled:

"It appears the Plaintiffs were owed money from Athens/Alpha. This money was for oil sold by Athens/Alpha from the well.

Athens/Alpha filed bankruptcy. The Plaintiffs never filed a claim in the Athens/Alpha bankruptcy.

A reorganization plan for Athens/Alpha was approved, and in that plan secured creditors of Athens/Alpha were to be paid in full.

The Plaintiffs claim to be secured creditors of Athens/Alpha. I find no case law or statute to support the Plaintiffs' claim to be secured creditors. The Plaintiffs were unsecured creditors of Athens/Alpha, and any return they may

get from that claim must be through the bankruptcy court."

The court dismissed the Van Sickles' pre-confirmation claims with prejudice. The court dismissed the Van Sickles' post-bankruptcy claims against Missouri Breaks without prejudice, ruling that Missouri Breaks provided an accounting of the interest in the well and made royalty payments after it began operating the well and that the Van Sickles did not claim the accounting was in error.

[¶ 7] In an addendum to the order granting summary judgment, the district court concluded Missouri Breaks was the only proper defendant. The court said, "[w]hile not part of the motion in chief, in oral arguments the Defendants pointed out, correctly, that only Missouri Breaks LLC should have been a named Defendant, as all the other entities are separate, and no evidence has been forthcoming by the Plaintiffs as to why the LLC veil should be pierced."

## II

[¶ 8] "'Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.'" *Good Bird v. Twin Buttes School Dist.*, 2007 ND 103, ¶ 5, 733 N.W.2d 601 (quoting *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615). The moving party has the burden of showing there are no genuine issues of material fact. *Good Bird*, at ¶ 5. "Whether a [district] court has properly granted summary judgment is a question of law which this Court reviews de novo on the entire record." *Id.*

## III

[¶ 9] The Van Sickles argue the district court improperly granted summary judgment dismissing their breach of contract claim because the bankruptcy reorganization plan is a contract, because they have allowed secured claims which entitle them to payment under the terms of the plan, and because the defendants have breached the contract by not paying the pre-confirmation royalties. The defendants argue the Van Sickles are not entitled to payment under the reorganization plan because the plan only allows for payment of allowed claims, because the Van Sickles do not have allowed claims, because any claim the Van Sickles may have had to royalties for oil produced prior to confirmation of the reorganization plan was discharged in the bankruptcy proceedings and because any remedy must be sought from the bankruptcy court. The Van Sickles argue their claims could not be discharged because they did not receive notice of the bankruptcy proceedings.

### A

[¶ 10] A confirmed reorganization plan is essentially a binding contract between the debtor and its creditors, and creditors may bring a state law breach of contract action in state court to enforce plan obligations. *See Paul v. Monts*, 906 F.2d 1468, 1471–76 (10th Cir.1990); *Murdock v. Holquin*, 323 B.R. 275, 282–83 (N.D.Cal.2005); *In re Nylon Net Co.*, 225 B.R. 404, 406 (Bankr.W.D.Tenn.1998).

[¶ 11] There are three elements of a prima facie case of breach of contract: "(1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." *Good Bird*, 2007 ND 103, ¶ 9, 733 N.W.2d 601. "Breach of contract occurs when there is nonperformance of a contractual duty when it is due." *Id.* The party claiming there is a breach has the burden of proof. *Id.*

[¶ 12] The reorganization plan in Athens/Alpha's bankruptcy case provides holders of "Allowed Secured Claims" are entitled to payment:

"Class 2 is composed of the holders of Allowed Secured Claims. The holders of claims in this class will be paid in full on the Effective Date and shall also receive interest on any such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose up to the value of the collateral securing such claim. The claims in this class shall be deemed unimpaired under the Plan."

An "Allowed Secured Claim" is defined as: "an Allowed Claim, arising on or before the Petition Date that is secured by a valid Lien, as hereinafter defined, on property of the Debtor which is not void or voidable under any state or federal law, including any provision of the Code. That portion of such Allowed Claim exceeding the value of security held therefor shall be an Allowed Unsecured Claim as hereinafter defined."

A "Lien" is defined in the plan as "any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in § 101 of the Code."

[¶ 13] The Van Sickles contend they have secured claims because payment of their royalties is protected by a statutory lien under N.D.C.C. § 47–16–39.1. Section 47–16–39.1, N.D.C.C., states "the obligation . . . to pay oil or gas royalties to the mineral owner or the mineral owner's assignee . . . is of the essence in the lease contract, and breach of the obligation may constitute grounds for cancellation of the [oil and gas] lease." The Van Sickles claim N.D.C.C. § 47–16–39.1 creates a statutory lien because it provides that a royalty owner could potentially cancel the oil and gas lease if the obligation to pay royalties is breached. The district court concluded the Van Sickles do not have secured claims.

[¶ 14] While the Van Sickles claim the district court was incorrect and ask this Court to find they have secured claims, we do not address issues not affecting the outcome of a case. *See J.P. v. Stark County Soc. Servs. Bd.*, 2007 ND 140, ¶ 17, 737 N.W.2d 627. Whether the Van Sickles have secured claims or not, they do not have allowed claims as defined by the reorganization plan. An "Allowed Claim" is:

"(i) a Claim that has been allowed by this Plan or a Final Order of the Bankruptcy Court or (ii) a Claim timely filed with the Clerk of Court scheduled as liquidated, undisputed and non-contingent by the Debtor in the schedules, lists and statement of financial affairs and executory contracts heretofore filed with the Bankruptcy Court as they may be amended or supplemented (collectively the "schedules"), as to which Claim no objection to the allowance thereof has been interposed within the period of time fixed by the Code or by a final order of the Bankruptcy Court, or as to which Claim either an objection to the Claim or an application to amend the schedules with respect to a scheduled Claim has resulted in the allowance of a Claim, in whole or in part, by a final order of the Bankruptcy Court."

The Van Sickles did not file a claim with the bankruptcy court, and neither the plan nor final order of the bankruptcy court includes their claim. We conclude the Van Sickles are not entitled to payment under the terms of the confirmed reorganization plan, and therefore the defendants did not breach the contract by failing to pay the Van Sickles' claims.

## B

[¶ 15] The Van Sickles also claim the reorganization plan does not apply to them and their claims were not discharged because they did not have notice of the bankruptcy proceedings. While the Van Sickles' arguments are contradictory and we have concluded the Van Sickles are not entitled to payment under the terms of the reorganization plan, the Van Sickles may still have a valid claim for pre-confirmation royalties because their debts may not have been discharged in the bankruptcy proceedings.

[¶ 16] In a judicial proceeding affecting property rights, due process requires that an interested party have notice of the proceeding to allow the party to present his objections. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). A debt cannot be discharged in bankruptcy unless the creditor had sufficient notice of the bankruptcy proceedings. *Jones v. Chemetron Corp.,* 212 F.3d 199, 209 (3rd Cir.2000). Under 11 U.S.C. § 523(a), certain debts, including debts not listed or scheduled, are not discharged in bankruptcy proceedings:

> "(a) A discharge under section ... 1141 ... of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2) [actions relating to debts incurred by fraud or misrepresentation], (4) [actions relating to fiduciary misconduct, embezzlement, or larceny], or (6) [actions relating to willful and malicious injury,] of this subsection, timely filing of a proof of claim, unless such creditor had notice

or actual knowledge of the case in time for such timely filing...."

The outcome of a bankruptcy reorganization, including the discharge of existing debts, is not binding on a creditor who did not have notice of the bankruptcy proceedings. *Bosiger v. U.S. Airways,* 510 F.3d 442, 451 (2007). A creditor is not collaterally attacking a bankruptcy order when he claims he did not receive notice of the bankruptcy proceedings and therefore his debt was not discharged; rather, he is attempting to show his claim was not discharged and bring himself within the provisions of 11 U.S.C. § 523. *McGhan v. Rutz,* 288 F.3d 1172, 1181 (9th Cir.2002); *Willows Convalescent Ctrs., Inc. v. Durheim,* 434 N.W.2d 677, 679 (Minn.Ct.App. 1989).

[¶ 17] While the Van Sickles did not specifically argue 11 U.S.C. § 523 applies, they did argue their debts were not discharged because they did not receive notice of the bankruptcy proceedings. The defendants concede the Van Sickles were not listed as scheduled creditors. The district court did not make any findings about notice, nor could the court validly do so in a summary judgment proceeding. "Notice is a question of fact," which is generally inappropriate for summary judgment. *See Dvorak v. Dvorak,* 2007 ND 79, ¶ 14, 732 N.W.2d 698. We conclude there is a factual issue whether the Van Sickles had notice of the bankruptcy proceedings, and if they did not receive notice, they must be allowed to adjudicate their contract claim against a party obligated to pay the pre-confirmation royalties.

[¶ 18] The district court incorrectly concluded any return the Van Sickles may have on their pre-confirmation claims must be through the bankruptcy court. The bankruptcy court has "original

but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (2007). When a court adjudicates whether a creditor's claim has been discharged by deciding whether the creditor had notice or actual knowledge of the bankruptcy proceeding, under 11 U.S.C. § 523(a)(3), it is a proceeding related to the bankruptcy case, and therefore state and federal courts have concurrent jurisdiction to decide the issue. *See, e.g., McGhan,* 288 F.3d at 1181; *Fidelity Nat'l Title Ins. Co. v. Franklin,* 179 B.R. 913, 919–25 (Bankr.E.D.Cal.1995); *In re Guzman,* 130 B.R. 489, 491 (Bankr.W.D.Tex. 1991); *Willows Convalescent Ctrs., Inc.,* 434 N.W.2d at 678–79; *Corsale v. Pantry Pride Supermarket, Inc.,* 197 A.D.2d 659, 661, 602 N.Y.S.2d 887 (N.Y.App.Div.1993). We conclude that, while relief might also be sought in the bankruptcy court, the district court has jurisdiction to decide whether the Van Sickles' pre-confirmation claims were discharged in Athens/Alpha's bankruptcy proceedings.

## C

[¶ 19] Although the Van Sickles are not entitled to payment of pre-confirmation royalties under terms of the reorganization plan, a genuine issue of material fact exists whether the Van Sickles had notice of the bankruptcy proceedings and whether their debts were discharged. The district court has jurisdiction to resolve this dispute and if the Van Sickles did not have notice, to adjudicate the claims surrounding the undischarged debt. We conclude the district court made a legal error and improperly granted summary judgment. We reverse and remand for proceedings to determine whether the Van Sickles had notice of the bankruptcy proceedings, whether their claims were discharged, and related proceedings, if any.

## IV

[¶ 20] The Van Sickles also sued for unpaid pre-confirmation royalties based on claims of conversion and tortious interference. The district court granted summary judgment dismissing these claims without explanation. The Van Sickles argue the court improperly granted summary judgment and dismissed these claims.

## A

[¶ 21] Conversion is a "tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.,* 2004 ND 117, ¶ 11, 680 N.W.2d 634. The key element of a claim for conversion is that the plaintiff was wrongfully deprived of his property, and there must be "an intent to exercise control or interfere with the use of property to such a degree as to require a forced sale of the plaintiff's interest in the goods to the defendant." *Id.*

[¶ 22] Claims for conversion and breach of contract may arise under the same facts. *Koch Oil, Inc.,* 2004 ND 117, ¶ 12, 680 N.W.2d 634. However, whether conduct that constitutes a breach of contract may also be conversion requires a court to look at the origin of the duty owed and the nature of the injury. We have said:

" 'Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others.' If the defendant's conduct— such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim

may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."

*Id.* at ¶ 19 (quoting *National Union Fire Ins. Co. v. Care Flight Air Ambulance Serv., Inc.,* 18 F.3d 323, 326 (5th Cir.1994) (citation omitted)).

[¶ 23] The Van Sickles argue the defendants exercised dominion and control over the oil proceeds, the defendants have an obligation under the lease and the reorganization plan to pay the royalties, and the defendants breached that obligation depriving the Van Sickles of their property rights. The Van Sickles' claim for unpaid oil and gas royalties is a claim for breach of contract and does not give rise to tort liability under the facts of this case. The district court properly dismissed the Van Sickles' conversion claim.

**B**

[¶ 24] To establish a prima facie case of intentional interference with a contract, the plaintiff must prove "(1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification." *Hilton v. North Dakota Educ. Ass'n,* 2002 ND 209, ¶ 24, 655 N.W.2d 60. "Wrongful interference with contractual rights, whether such interference induces or prevents a third person to refrain from forming a contract, or induces such person to break an existing contract, will render the person whose wrongful conduct is responsible for these results liable in damages to the party injured." *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.,* 2001 ND 116, ¶ 33, 628 N.W.2d 707.

[¶ 25] The Van Sickles claim the defendants tortiously interfered with a contract because they failed to pay the Van Sickles as the lease and reorganization plan require. This is a breach of contract claim. Tortious interference requires a person who is not a party to the contract to interfere with the contract. *See Koehler v. County of Grand Forks,* 2003 ND 44, ¶ 25, 658 N.W.2d 741. The Van Sickles contend they have a contract with the defendants, the defendants breached the contract, and the defendants' breach interfered with the contract. The Van Sickles have failed to establish a prima facie case of tortious interference, and therefore, the Van Sickles' tortious interference claim was properly dismissed.

**V**

[¶ 26] The Van Sickles also sued for unpaid royalties they claimed they did not receive for oil and gas produced after Missouri Breaks began post-bankruptcy operation of the well. The defendants provided the Van Sickles with an accounting of the interest in the well for post-bankruptcy production, and the Van Sickles did not claim the accounting was in error. The district court granted summary judgment and dismissed the Van Sickles' claims for post-bankruptcy royalties without prejudice. The Van Sickles do not challenge the court's decision on appeal. We affirm the court's decision to grant summary judgment and dismiss the Van Sickles' claims for post-bankruptcy royalties.

**VI**

[¶ 27] The Van Sickles claim the district court erred in concluding only Missouri Breaks was the only party that should have been a named defendant. The Van Sickles contend the Interest Holders are proper defendants because they are working interest holders and they assumed

all of Athens/Alpha's obligations under the reorganization plan and the original lease as Athens/Alpha's successor and assignee.

[¶ 28] However, the district court did not dismiss the action against the Interest Holders because they are not proper defendants. Any opinion we may give on this issue would be advisory only, and we do not issue advisory opinions. *See In re Guardianship of Shatzka,* 2003 ND 147, ¶ 8, 669 N.W.2d 95.

## VII

[¶ 29] We conclude the district court committed legal error by concluding it did not have jurisdiction to decide whether the Van Sickles are entitled to payment for pre-bankruptcy royalties. We reverse and remand the court's decision on the pre-bankruptcy royalties and affirm the dismissal of the conversion, tortious interference, and post-bankruptcy claims.

[¶ 30] GERALD W. VANDE WALLE, C.J., LAWRENCE A. LECLERC, S.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 31] The Honorable LAWRENCE A. LECLERC, S.J., sitting in place of KAPSNER, J., disqualified.