2013 ND 160

**THIMJON FARMS PARTNERSHIP,**
Troy Thimjon and Jay Thimjon,
Plaintiffs and Appellants

v.

**FIRST INTERNATIONAL BANK
& TRUST,** Defendant and
Appellee.

Mark and Jerome Hagemeister d/b/a
Hagemeister Farms, Plaintiffs
and Appellants

v.

First International Bank & Trust,
Defendant and Appellee.

No. 20120440.

Supreme Court of North Dakota.

Sept. 6, 2013.

Rehearing Denied Oct. 31, 2013.

Todd Ervin Zimmerman (argued) and Aubrey Jo Fiebelkorn–Zuger (appeared), Fargo, ND, for plaintiffs and appellants, Mark and Jerome Hagemeister, d/b/a Hagemeister Farms.

Jonathan R. Fay (appeared), Detroit Lakes, MN, for plaintiffs and appellants, Thimjon Farms Partnership, Troy Thimjon and Jay Thimjon.

Jon R. Brakke (argued) and Matthew L. Thompson (on brief), Fargo, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Thimjon Farms Partnership and Hagemeister Farms appeal a district court judgment granting First International Bank & Trust's motion for summary judgment and denying Thimjon's and Hagemeister's motions to amend their complaints. We affirm.

I

[¶ 2] Northern Grain Equipment, LLC, a grain equipment dealer, sells and services grain bins and dryers in West Fargo,

North Dakota. First International made loans to Northern Grain, including a line of credit, which were secured by Northern Grain assets. Northern Grain's deposit account with First International was one of the secured assets. Northern Grain's line of credit with First International matured on January 5, 2010.

[¶ 3] Northern Grain subsequently entered into contracts with Thimjon and Hagemeister to construct grain-handling systems on their respective properties. First International was not a party to these contracts. Neither Thimjon nor Hagemeister were customers of First International. No communications occurred between First International and Thimjon or Hagemeister regarding their respective contracts with Northern Grain. Northern Grain made no statements to Thimjon or Hagemeister regarding Northern Grain's relationship with First International. Both Thimjon and Hagemeister made down payments to Northern Grain, which were deposited in Northern Grain's account at First International. Northern Grain never constructed the grain-handling systems and discontinued business.

[¶ 4] Thimjon and Hagemeister brought separate actions against First International, which ultimately were consolidated. They alleged that First International's decision to cease loaning money to Northern Grain resulted in Northern Grain breaching its contracts with Thimjon and Hagemeister and that First International intentionally misled Northern Grain to the detriment of Thimjon and Hagemeister. First International moved for summary judgment. The district court viewed the evidence of the following facts in the light most favorable to Thimjon and Hagemeister.

[¶ 5] According to evidence presented in opposition to summary judgment, Northern Grain advised First Internation-al of the importance of its line of credit and that Northern Grain could not continue operation into the 2010 construction season without the line of credit. In November 2009, a loan officer at First International informed First International's credit committee that Northern Grain's financial position was deteriorating, that Northern Grain's line of credit lacked sufficient collateral and that Northern Grain would be unable to repay the line of credit without using deposits from 2010 projects. In December 2009, First International decided not to provide a future line of credit to Northern Grain. Northern Grain was not informed of this decision but knew its line of credit matured on January 5, 2010.

[¶ 6] According to evidence presented in opposition to summary judgment, from late November 2009 through March 2010, First International repeatedly told Northern Grain that further financing would be available if Northern Grain paid down its current line of credit. First International encouraged Northern Grain to enter into construction contracts with new customers and to accept down payments. Northern Grain informed First International when Northern Grain signed new contracts and when deposits would come in. When Northern Grain received Thimjon's and Hagemeister's down payments, First International requested that Northern Grain apply the payments to Northern Grain's line of credit. Approximately $46,704 of Thimjon's $197,005.35 down payment was applied to the line of credit, and approximately $34,316 of Hagemeister's $240,000 down payment was applied to the line of credit. Absent promises of future financing from First International, Northern Grain would not have entered into the contracts with Thimjon and Hagemeister.

[¶ 7] First International moved for summary judgment. While the motion was pending, Thimjon and Hagemeister

moved to amend their complaints to add a claim for deceit and to seek exemplary damages. The district court denied the motion to amend, granted First International's motion for summary judgment and entered judgment dismissing Thimjon's and Hagemeister's claims with prejudice. Thimjon and Hagemeister appeal, arguing the district court erred by granting First International's motion for summary judgment and by denying their motion to amend.

## II

[¶ 8]  Our standard of review for summary judgment is well established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Arndt v. Maki,* 2012 ND 55, ¶ 10, 813 N.W.2d 564 (quoting *Saltsman v. Sharp,* 2011 ND 172, ¶ 4, 803 N.W.2d 553).

## III

[¶ 9]  Thimjon and Hagemeister argue the district court erred by granting First International's motion for summary judgment and dismissing Thimjon's and Hagemeister's various claims. We analyze each claim separately.

### A

[¶ 10]  Thimjon and Hagemeister argue the district court erred by dismissing their claim of intentional interference with contract. Thimjon and Hagemeister argue First International induced Northern Grain to enter into contracts with Thimjon and Hagemeister based upon First International's assurances of future financing and instigated Northern Grain's breach of those contracts by demanding Northern Grain apply large amounts of the down payments to Northern Grain's line of credit with First International and refusing to provide further financing.

[¶ 11]  To succeed on a claim for intentional interference with contract, a plaintiff must prove "(1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification." *Hilton v. N.D. Educ. Ass'n,* 2002 ND 209, ¶ 24, 655 N.W.2d 60. "Tortious interference requires a person who is not a party to the contract to interfere with the contract." *Van Sickle v. Hallmark & Assocs., Inc.,* 2008 ND 12, ¶ 25, 744 N.W.2d 532. It is undisputed that contracts existed between Northern Grain and Thimjon and Hagemeister and that those contracts were breached by Northern Grain's failure to perform.

[¶ 12]  Generally, an interference with contract claim contemplates a tortfea-

sor who either prevented a third party from entering into a contract or induced the third party to breach the contract with the plaintiff. *Van Sickle*, 2008 ND 12, ¶ 24, 744 N.W.2d 532. Thimjon and Hagemeister argue First International instigated breaches of the contracts by demanding large portions of their down payments from Northern Grain and by refusing to provide Northern Grain future financing. First International argues that, even assuming the breaches were instigated by First International's actions, those actions were justified.

[¶ 13] "[O]rdinarily justification is a question of fact, but justification can be decided as a matter of law by showing a defendant was justified by a lawful object which he had a right to assert." *Hilton*, 2002 ND 209, ¶ 26, 655 N.W.2d 60. In *Hilton*, we applied the rationale of *Fankhanel v. M & H Constr. Co., Inc.*, 1997 ND 20, 559 N.W.2d 229, which analyzed justification under Minnesota law. *Hilton*, at ¶ 27. "The test for proving justification is what is reasonable conduct under all the circumstances of the case." *Fankhanel*, at ¶ 10. Even where the evidence shows a defendant interfered with a contract, the defendant's actions are justified if they are done for "legitimate business concerns and did not maliciously seek to damage the plaintiff." *Id.* at ¶ 11.

[¶ 14] Here, First International was a secured creditor with a contractual right to collect the debt due from Northern Grain's line of credit. Collection of a debt past its maturity date is a legitimate business concern. *See Langeland v. Farmers State Bank*, 319 N.W.2d 26, 33 (Minn.1982) (holding defendant's redemption of real property was legal method of collecting debt and plaintiff had no claim for wrongful interference of contract); *New Concept Confinement Tech. Feeders, Inc. v. Kuecker*, 364 N.W.2d 450, 453 (Minn.Ct.App.

1985) (holding defendants had lawful justification to pursue debt owed and trial court properly dismissed claim of interference with contract). Thimjon and Hagemeister failed to show First International had an obligation to lend Northern Grain additional money after its line of credit matured. First International's refusal to extend credit also was legitimate based on First International's concerns regarding Northern Grain's solvency moving forward. Thus, Thimjon's and Hagemeister's claim for intentional interference with contract was properly dismissed because First International's actions were legally justified.

[¶ 15] Thimjon and Hagemeister argue the district court erred by dismissing their claim of negligent interference with contract. In *Peterson v. Zerr*, we declined to recognize the cause of action. 477 N.W.2d 230, 233–34 (N.D.1991). Thimjon and Hagemeister cite no authority in support of such a claim, and we decline to recognize it. The district court did not err by dismissing the negligent interference with contract claim.

**B**

[¶ 16] Thimjon and Hagemeister argue the district court erred by dismissing their claim for unlawful interference with business. To prevail on a claim for unlawful interference with business, a plaintiff must prove:

"(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted."

*Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116, ¶ 36, 628 N.W.2d 707. "[I]n order to recover for wrongful interference with business, the plaintiff must prove the defendant's conduct was independently tortious or otherwise unlawful." *Id.* at ¶ 42. Thimjon and Hagemeister argue the facts alleged support a claim for deceit, the independent tort required to support their claim for wrongful interference with business. As explained below in Part IV(A), Thimjon and Hagemeister cannot establish a deceit claim. Therefore, no independent tortious or unlawful act exists and their claim for unlawful interference with business was properly dismissed.

## C

[¶ 17] Thimjon and Hagemeister argue the district court erred by dismissing their claims of promissory and equitable estoppel. Promissory estoppel requires a plaintiff to show "1) a promise which the promisor should reasonably expect will cause the promisee to change his position; 2) a substantial change of the promisee's position through action, or forbearance; 3) justifiable reliance on the promise; and 4) injustice which can only be avoided by enforcing the promise." *University Hotel Dev., LLC v. Dusterhoft Oil, Inc.*, 2006 ND 121, ¶ 11, 715 N.W.2d 153 (quotation omitted). "The promise must 'be clear, definite, and unambiguous as to essential terms before the doctrine of promissory estoppel may be invoked to enforce an agreement or to award damages for the breach thereof.'" *Id.* (quotation omitted).

[¶ 18] Equitable estoppel requires a plaintiff to show:

"(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts."

*O'Connell v. Entm't. Enters., Inc.*, 317 N.W.2d 385, 389 (N.D.1982) (quotation omitted). The party claiming estoppel must show:

"(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

*Id.* (quotation omitted).

[¶ 19] A plaintiff's reliance on the defendant's promise or conduct is necessary under both theories of recovery. Here, First International had no communications with Thimjon or Hagemeister. Without communications, Thimjon and Hagemeister cannot establish reliance upon any statements of First International, the party to be estopped. Consequently, they argue we should permit a third party to enforce a promise under the promissory estoppel doctrine. As in *University Hotel Dev., LLC*, we decline to address whether a third party may enforce a promise under the promissory estoppel doctrine because an essential element of the claim is missing. 2006 ND 121, ¶ 18, 715 N.W.2d 153. Northern Grain did not convey any of First International's representations regarding Northern Grain's financing to Thimjon or Hagemeister. Therefore, there was no reliance by Thimjon and Hagemeister, even indirectly, on First International's alleged misrepresentations. Justifiable reliance is an essential element

of third-party promissory estoppel and cannot be shown here. *See* Restatement (Second) of Contracts § 90 cmt. c (2012). Thimjon's and Hagemeister's claims of equitable estoppel and promissory estoppel were properly dismissed.

## D

[¶ 20] Thimjon and Hagemeister argue the district court erred by dismissing their claim for unjust enrichment. Unjust enrichment requires a plaintiff to show "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law." *Hayden v. Medcenter One, Inc.*, 2013 ND 46, ¶ 14, 828 N.W.2d 775. "Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another." *Id.* "The doctrine is applied in the absence of an express or implied contract." *Id.*

[¶ 21] First International is a legal stranger to Thimjon and Hagemeister, and no contract exists between them. Thimjon and Hagemeister argue it is inequitable to permit First International to retain the payments from Northern Grain to their detriment. However, the connection between First International's "enrichment" and Thimjon's and Hagemeister's "impoverishment" is lacking. "The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value." *Hayden*, 2013 ND 46, ¶ 14, 828 N.W.2d 775. Here, First International received no benefit directly from Thimjon and Hagemeister. Instead, the exchange of funds occurred between Northern Grain and Thimjon and Hagemeister, which indirectly benefitted First International. Generally, a third party is not liable under unjust enrichment simply for benefitting from a contract between two other parties. *See Haggard Drilling, Inc. v. Greene*, 195 Neb. 136, 236 N.W.2d 841, 846 (1975) ("The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution."). Moreover, where a third party benefits from a contract entered into by two other parties, the failure to perform by one of the contracting parties does not give rise to a right of restitution against the third party, absent some misleading act by the third party. *Id. See DCB Constr. Co., Inc. v. Central City Dev. Co.*, 965 P.2d 115, 121 (Colo.1998) ("We all enjoy the protection that we are generally not liable for services or goods for which we did not contract. The courts should be slow to impose obligations in the absence of a contract; slow to impose the debts of one party upon another.").

[¶ 22] Even assuming Thimjon and Hagemeister demonstrated a connection between their "impoverishment" and First International's "enrichment," they cannot show an absence of justification for the enrichment. First International was Northern Grain's secured lender. First International paid value by lending money to Northern Grain. Thimjon and Hagemeister made down payments to Northern Grain, which Northern Grain was free to use or spend how it chose. Northern Grain deposited those unrestricted funds into its account at First International and used most of the respective down payments for reasons other than repaying First International. "The essential element of recovery under unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which

would be inequitable to retain without paying for its value." *McGhee v. Mergenthal*, 2007 ND 120, ¶ 16, 735 N.W.2d 867. Thimjon's and Hagemeister's impoverishment resulted from a valid contractual arrangement with Northern Grain, and Northern Grain's subsequent impoverishment resulted from a valid contractual arrangement with First International. "When the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity and there has been no unjust enrichment." *BTA Oil Producers v. MDU Res. Group, Inc.*, 2002 ND 55, ¶ 23, 642 N.W.2d 873.

[¶ 23] In *Hayden*, the plaintiffs argued the defendant, a medical care provider, was enriched by receiving health insurance payments, which was a direct result of the plaintiffs' impoverishment through their expenses in maintaining insurance coverage and paying attorney fees and costs in a related lawsuit. 2013 ND 46, ¶ 15, 828 N.W.2d 775. There, the plaintiffs' son sustained severe brain injuries in an accident. *Id.* at ¶ 2. The son's insurance provider discontinued making payments, alleging the son's injuries were not covered by the policy. *Id.* at ¶ 3. The plaintiffs sued the insurance provider in federal court, alleging the provider wrongfully failed to pay health insurance benefits. *Id.* The insurance provider began to make payments directly to the defendant while the plaintiffs incurred costs for the son's COBRA premium payments. *Id.* The plaintiffs sued the medical provider, arguing they were entitled to reimbursement for their costs in pursuing the original action against the insurance provider because absent their previous lawsuit against the insurance provider, the medical provider would not have received payment for the medical bills. *Id.* at ¶ 4.

[¶ 24] We explained the medical provider's enrichment was not unjust: "[T]he fact remains that the medical providers were entitled to full payment for services rendered either through insurance proceeds or from [the son] himself. Consequently, there is nothing unjust in allowing the medical providers to retain the full amount of insurance proceeds they received for [the son's] medical care." *Hayden*, 2013 ND 46, ¶ 19, 828 N.W.2d 775. Similarly here, First International was entitled to payment from Northern Grain based on the underlying loan agreement. Therefore, First International's repayment or "enrichment" was justified, and the district court properly dismissed the unjust enrichment claim.

E

[¶ 25] Thimjon and Hagemeister argue the district court erred by dismissing their claim under the Unlawful Sales or Advertising Practices Act. *See* ch. 51–15, N.D.C.C. The Act provides:

> "The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."

N.D.C.C. § 51–15–02. The Act authorizes a private cause of action "by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter." N.D.C.C. § 51–15–09; *see Benz Farm, LLP v. Cavendish Farms, Inc.*, 2011 ND 184, ¶ 18, 803 N.W.2d 818. We construed the Act to apply "only to the conduct of the person who sells or advertises merchandise." *Benz Farm, LLP*, at ¶ 20. "The statute prohibits deceptive or fraudulent acts 'in connection with the sale'

of merchandise." *Id.* (quoting N.D.C.C. § 51–15–02).

[¶ 26] Thimjon and Hagemeister argue First International made deceptive statements to Northern Grain by representing First International would provide future financing if Northern Grain paid down its line of credit. However, these statements were not made to Thimjon or Hagemeister, nor were they made "in connection with the sale or advertisement of any merchandise" by First International to Thimjon or Hagemeister. N.D.C.C. § 51–15–02. Therefore, the provisions of the Act creating a private cause of action are inapplicable, and the district court properly dismissed the claim.

### F

[¶ 27] Thimjon and Hagemeister argue the district court erred by dismissing their claim for conversion. They argue First International wrongfully deprived them of the money they paid to Northern Grain. "Conversion is the wrongful exercise of dominion over the personal property of another in a manner inconsistent with, or in defiance of, the owner's rights." *Harwood State Bank v. Charon*, 466 N.W.2d 601, 603 (N.D.1991). "[T]he plaintiff in a conversion action must show 'he had an interest in the property at the time of the alleged conversion that entitled him to possession, if not immediately, at least at some point in the future. Absent such a interest, an action for conversion cannot lie.'" *Hildenbrand v. Capital RV Center, Inc.*, 2011 ND 37, ¶ 17, 794 N.W.2d 733 (quoting *Dairy Dep't. v. Harvey Cheese, Inc.*, 278 N.W.2d 137, 144 (N.D.1979)). Thimjon and Hagemeister have no interest in the funds paid to First International by Northern Grain. *See Mauriceville Nat. Bank v. Zernial*, 892 S.W.2d 858, 860 (Tex.1995) ("Generally, when a depositor deposits funds into a bank account, those funds are unrestrict-ed."). Absent an interest in the funds once paid to Northern Grain, no claim for conversion exists and the district court's dismissal of the conversion claim was proper.

### IV

[¶ 28] Thimjon and Hagemeister argue the district court abused its discretion by denying their motions to amend their complaints to add claims for deceit and exemplary damages. "A district court has wide discretion in deciding whether to permit amended pleadings after the time for an amendment has passed," and this Court reviews the decision under an abuse of discretion standard. *Benz Farm, LLP*, 2011 ND 184, ¶ 25, 803 N.W.2d 818 (quotation omitted). "When a proposed amendment would be futile, the district court does not abuse its discretion in denying a motion to amend the complaint." *Id.* (quoting *Johnson v. Hovland*, 2011 ND 64, ¶ 8, 795 N.W.2d 294). If leave to amend is not sought until after discovery has closed and a motion for summary judgment is docketed, "an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence." *Benz Farm, LLP*, at ¶ 26 (quotation omitted). The amendment is futile "if the added claim would not survive a motion for summary judgment." *Id.* (quotation omitted).

### A

[¶ 29] Thimjon and Hagemeister argue First International intentionally made deceitful statements to Northern Grain, knowing the statements would cause harm to Thimjon and Hagemeister. "One who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that

person thereby suffers." N.D.C.C. § 9–10–03. Deceit is defined as:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise made without any intention of performing."

N.D.C.C. § 9–10–02. Thimjon and Hagemeister argue First International unequivocally told Northern Grain that First International would provide future financing if Northern Grain paid down its line of credit and this statement drove Northern Grain's business decisions, which caused foreseeable harm to Northern Grain's customers.

[¶ 30] First International argues it owed no duty to Thimjon or Hagemeister. "[A] party is liable for nondisclosure under the statute only if he had a duty to disclose the true facts." *Hellman v. Thiele*, 413 N.W.2d 321, 326 (N.D.1987). In *Hellman*, we held a bank was not liable for failing to disclose a customer's insolvency. *Id.* at 329. We explained, "The missing element is duty on the part of the Bank to inform the plaintiffs of [the customer's] financial condition." *Id.* Thimjon and Hagemeister concede First International owed no duty to them to disclose Northern Grain's financial condition but argue instead First International made affirmative misrepresentations.

[¶ 31] In *Ostlund Chemical Co. v. Norwest Bank*, we held the plaintiff raised a genuine issue of material fact on whether the defendant bank committed deceit. 417 N.W.2d 833, 838 (N.D.1988). There, the plaintiff contacted the bank to determine if the third-party farmer had a sufficient line of credit to pay the plaintiff's invoices, and the bank represented the farmer did have sufficient credit. *Id.* at 835. In fact, the line of credit was insufficient for the charges, and the bank terminated the line of credit. *Id.* The plaintiff sued the bank, alleging deceit. *Id.* We explained that although the bank initially had no duty to disclose any information about its customer's financial condition, "once the Bank chose to reply to Ostlund's inquiry it had a duty to impart full, accurate, and truthful information." *Id.* at 836. Unlike the defendant in *Ostlund*, First International made no statements to Thimjon or Hagemeister about Northern Grain's line of credit or financial condition.

[¶ 32] Thimjon and Hagemeister rely on *United States v. Hawley*, which they argue establishes a direct relationship between the plaintiff and defendant is unnecessary to support a claim for deceit. 619 F.3d 886, 897 (8th Cir.2010). There, the government argued the defendant insurance agent, Hawley, defrauded the government by causing ineligible farmers to make claims against insurance policies issued by a private insurance company and reinsured by a government corporation. *Id.* at 888. The court held a genuine issue of material fact existed as to whether Hawley had reason to expect that the representations set forth in false insurance applications he signed and submitted would reach the Federal Crop Insurance Corporation and influence the FCIC's decision to reimburse North Central Crop Insurance, Inc. *Id.* at 897. The court applied Iowa law, specifically an Iowa Supreme Court case that adopted section 533 of the Restatement (Second) of Torts:

"[T]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in

justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved."

*Hawley,* at 897 (quoting *Clark v. McDaniel,* 546 N.W.2d 590, 593 (Iowa 1996) (quoting Restatement (Second) of Torts § 533 (1977))).

[¶ 33] While the position from the Restatement (Second) of Torts given in *Clark* and used in *Hawley* may support the proposition that the defendant's misrepresentation need not be made directly to the plaintiff, it does not lead to the conclusion that a cause of action for deceit exists absent actual reliance on the misrepresentation by the plaintiff. On the contrary, without agreeing that Restatement section 533 represents the status of current North Dakota law, we note commentary suggests actual reliance by the plaintiff is necessary for a successful claim. The defendant must make the misrepresentation with the intent it will be repeated or communicated to another "or must have information that gives him special reason to expect that it will be communicated to others, and will influence their conduct." Restatement (Second) of Torts § 533 cmt. d (2012). The court in *Clark* quoted other commentary explaining the requirement that the misrepresentation must actually be communicated to the plaintiff:

"Virtually any misrepresentation is capable of being transmitted or repeated to third persons, and if sufficiently convincing may create an obvious risk that they may act in reliance upon it. This risk is not enough for the liability covered in this section. The maker of the misrepresentation must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach those persons and will influence their conduct."

*Clark,* 546 N.W.2d at 593 (quoting Restatement (Second) of Torts § 531 cmt. d (1977)). First International's misrepresentations were never communicated to Thimjon or Hagemeister. They cannot show any misrepresentations influenced their conduct. The district court was within its discretion when it concluded the claim was futile and denied Thimjon's and Hagemeister's motions to amend their complaints to add claims for deceit.

B

[¶ 34] Thimjon and Hagemeister argue the district court abused its discretion by denying their motions to amend their complaints to add claims for exemplary damages. To obtain exemplary damages, a plaintiff must show the defendant guilty of "oppression, fraud, or actual malice." N.D.C.C. § 32–03.2–11(1). Given the lack of viable substantive claims, the claim for exemplary damages is futile, and the district court was within its discretion to deny the motion to amend. *Hilton,* 2002 ND 209, ¶ 31, 655 N.W.2d 60 ("Punitive damages are not allowed in the absence of compensatory damages. Because [plaintiff] failed to establish he was entitled to compensatory damages, he was not entitled to punitive damages." (citations omitted)).

V

[¶ 35] We affirm the district court judgment granting First International's motion for summary judgment and denying Thimjon's and Hagemeister's motions to amend their complaints.

[¶ 36] MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 37]   The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 38]   I concur in parts I, II, III C, D, E, F, and IV. I respectfully dissent as to Parts III A and B, and V.

[¶ 39]   Viewing the evidence in the manner outlined in ¶ 8 of the majority opinion, i.e., in favor of Thimjon and Hagemeister, First International Bank & Trust told Northern Grain Equipment that further financing would be available to Northern if it paid down its line of credit; absent those promises of future financing, Northern Grain would not have entered into the contracts with Thimjon and Hagemeister; First International urged Northern Grain to enter into new contracts to sell grain bins and dryers; First International requested the down payments from those contracts be applied to the line of credit; First International refused to extend Northern Grain's line of credit. Although there may be no evidence showing a direct intent on the part of First International to cause Northern Grain to breach its contracts, it is sufficient to sustain an action for intentional breach of contract if First International acted with knowledge that the interference would result. *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991). I believe that giving Thimjon and Hagemeister the benefit of all favorable inferences which can reasonably be drawn from these facts there is a genuine issue of fact whether or not First International acted with knowledge that interference with Northern Grain's contracts with Thimjon and Hagemeister would result from requiring Northern Grain to apply the down payment from these contracts to its line of credit and refusing to provide further financing to Northern Grain to complete those contracts.

[¶ 40]   The majority opinion does not necessarily reject that belief; rather, it concludes First International's actions were justified and relies on our decision in *Hilton v. N.D. Educ. Ass'n.*, 2002 ND 209, ¶ 27, 655 N.W.2d 60, which noted that "Hilton has not suggested any argument that would preclude application of the rationale from *Fankhanel* to our law for intentional interference with contract, and we apply that rationale to this case." The decision in *Fankhanel* was based on a choice-of-law question and the Court applied the Minnesota law on justification under the "significant contacts approach." *Fankhanel v. M & H Constr. Co., Inc.*, 1997 ND 20, ¶ 7, 559 N.W.2d 229. It thus appears that although we have cited justification principles from Minnesota cases in these decisions, we have not necessarily embraced them as a precedent for other cases applying North Dakota law.

[¶ 41]   Moreover, the factual scenarios in the North Dakota cases as well as the Minnesota cases are significantly different from this case in that in none of those cases was the down payment the plaintiffs made on a contract with a borrower diverted directly by the borrower to the lender at the direction of the lender. Under these circumstances I believe whether or not First International Bank was justified in its actions is a question of fact and therefore summary judgment was improperly granted on the issue of intentional interference with contract as well as those other issues which were disposed of on the grounds First International's actions were justified.

[¶ 42]   Finally, I note that if there is justification for First International's actions in diverting the plaintiffs' down payments to pay the existing debt of Northern Grain to First International knowing that it would deny further loans to Northern

Grain and that Northern Grain would default on its contracts with the plaintiffs, contracting parties should be forewarned there are precautions they should take before entering into these contracts. If the contract calls for a down payment for a future performance by the other party, the person making that down payment should inquire whether or not the other party is financed by a lender and, if that is the case, the down paying party should inquire of the lender whether or not the other party has a sufficient line of credit to perform the contract. *See Ostlund Chemical Co. v. Norwest Bank,* 417 N.W.2d 833 (N.D.1988) (holding the bank had a duty to give truthful information and could be subject to an action for deceit if it fails to do so) discussed by the majority opinion at ¶ 31. Only then will the down paying party be protected from a lender encouraging a borrowing party to enter into additional contracts, taking the down payment on those contracts and applying it to prior loans, refusing to advance a further line of credit knowing that by doing so the borrowing party will be unable to perform the contract, and leaving the innocent, down paying party without recourse because the borrowing party is bankrupt.

[¶ 43] Because I believe there are questions of fact as to the actions of First International in the first instance and, if those facts as alleged are true, whether or not First International's actions were justified, I respectfully dissent.

[¶ 44]   DONOVAN J. FOUGHTY, D.J., concurs.