# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2992

_____

United States of America,           *
           *
        Appellant,       *
           *   Appeal from the United States
    v.            *   District Court for the
           *   Northern District of Iowa.
Russell T. Hawley; Hawley Insurance,  *
Inc.,            *
           *
        Appellees.      *

_____

Submitted: May 12, 2009
Filed: August 23, 2010

_____

Before RILEY, Chief Judge,[1] SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The United States brought a civil action against Russell T. Hawley, an insurance agent, and his insurance company, Hawley Insurance, Inc. (collectively, "Hawley"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)-(3) (2006), *amended by* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a)(1), 123 Stat. 1617, 1621-22 (2009), and fraud under Iowa common law. The theory of the government's suit was that Hawley defrauded the

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

government by causing ineligible farmers to make claims against insurance policies that were issued by a private insurance company and reinsured by a government corporation. The district court granted summary judgment in favor of Hawley on all claims, and the government appeals. We reverse and remand for further proceedings.

I.

In 1938, Congress enacted the Federal Crop Insurance Act (the "Act"), 7 U.S.C. §§ 1501-1524, to "improv[e] the economic stability of agriculture" by establishing a federal crop insurance program. *Id*. § 1502(a). To implement the program, Congress created the Federal Crop Insurance Corporation ("FCIC"), a wholly owned government corporation within the United States Department of Agriculture. *Id.* § 1503; 7 C.F.R. § 400.701. In 1996, Congress created the Risk Management Agency ("RMA"), which administers the federal crop insurance program on behalf of the FCIC. We refer to the FCIC and the RMA jointly as the FCIC.

The FCIC contracts with approved private insurance companies to offer crop insurance policies to eligible farmers. 7 U.S.C. § 1502(b)(2). Under the program, farmers purchase policies from the designated private insurance companies, and insurance agents receive commissions for the policies they write for those companies. Those companies are in turn reinsured by the FCIC in accordance with the terms of a standard reinsurance agreement ("SRA"). Thus, when a farmer incurs a loss to an insured crop, the farmer files a claim with the private insurance company. The insurance company assesses the amount of the loss, pays the farmer's claim for damage, and then seeks reimbursement from the FCIC. The FCIC reimburses the company for all or part of the amount paid to the farmer, depending on the particular arrangement set forth in the SRA. The FCIC also subsidizes a portion of the premiums paid by the insured farmers.

The approved private insurance company in this case was North Central Crop Insurance, Inc. ("NCCI"). Russell Hawley worked as a private insurance agent for NCCI. Hawley had experience in the crop insurance industry, having previously worked as a crop insurance adjuster for NCCI and another crop insurance company before starting his own crop insurance agency, Hawley Insurance, Inc., in 1994. As NCCI's agent, Hawley sold Multi-Peril Crop Insurance ("MPCI") policies to various individuals, receiving commissions from NCCI on those policies. MPCI policies are reinsured by the FCIC and offer coverage for crop losses. 7 C.F.R. §§ 400.701, 457.172. To obtain MPCI, the farmer must have a bona fide interest, or "insurable interest," in the crop at the time coverage begins and must submit an application for insurance through an insurance agent. 7 C.F.R. §§ 400.651, 654(a). Once the insurance company accepts the application and issues an insurance policy to the farmer, the farmer must report and certify each year to the insurance company that he has an interest in the insured crop. *Id.* § 400.654(d). These reports are termed "acreage reports." *Id.*

In February 2000, Hawley signed and submitted to NCCI a crop insurance application in the names of brothers Sydney and Stanley Windquist for crops in South Dakota. The Windquists, however, were ineligible to receive FCIC-reinsured coverage, because they had no insurable interest in the crops. The Windquists certified that they had an interest in the crops, and in June 2000, Hawley signed and submitted their acreage reports to NCCI. Subsequently, the Windquists filed claims with NCCI for losses to the insured crops, and NCCI paid the Windquists for those losses. The FCIC ultimately reimbursed NCCI for those payments and for premium subsidies on the Windquist policy, in the amount of $145,540. The government prosecuted the Windquists for federal crop insurance fraud, and the case was resolved when the Windquists admitted that they did not have an insurable interest in the crops and entered into pretrial diversion agreements.

A similar sequence of events occurred in 2001. In March of that year, Hawley signed and submitted to NCCI an application for crop insurance in the name of Ed Marshall for land in South Dakota. Hawley received Marshall's application from another individual, so Hawley never witnessed Marshall sign the application. Marshall eventually admitted to the government as part of a civil settlement agreement that he never signed the application, and that Hawley told him in April 2001 that he was insured on land in South Dakota. In June 2001, Hawley signed and submitted to NCCI acreage reports for the crop land in Marshall's name, and Marshall eventually submitted claims to NCCI for losses to the insured crops. NCCI paid Marshall for those losses, and FCIC reimbursed NCCI for those payments and for premium subsidies in the amount of $159,960.

The government learned of Hawley's actions, and in October 2006, brought a civil action against him in the district court. The complaint alleged that Hawley knowingly caused ineligible farmers to obtain MPCI coverage and to receive payments from NCCI, payments which the FCIC reimbursed. The government sought treble damages and civil penalties under three subsections of the FCA, 31 U.S.C. § 3729(a)(1)-(3) (2006), *amended by* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a)(1), 123 Stat. 1617, 1621-22 (2009). Section 3729(a)(1) renders liable any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." Section 3729(a)(2) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." And section 3729(a)(3) makes liable any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." The government also asserted an Iowa common-law claim of fraud.

The parties filed cross-motions for summary judgment. In April 2008, the district court granted summary judgment in favor of Hawley on the government's

§ 3729(a)(1) claim, but denied the motions on the remaining claims and set them for trial. *United States v. Hawley*, 544 F. Supp. 2d 787 (N.D. Iowa 2008). The court concluded that the plain language of § 3729(a)(1) requires proof that Hawley "presented or caused to be presented" a claim "to an officer or employee of the United States Government," not merely to NCCI. *Id*. at 806. In the court's view, the government had alleged and proved only that Hawley presented, or caused to be presented, false claims to NCCI, and thus the government, as a matter of law, could not establish the element of presentment. *Id*. As to the § 3729(a)(2) and (a)(3) claims, the court concluded that neither provision required "presentment" to the United States government, and that genuine issues of material fact remained regarding the falsity of the insurance applications and acreage reports, Hawley's knowledge of such falsity, and Hawley's participation in a conspiracy to get false claims paid by the government. *Id*. at 809-11. These and other similar fact questions, the court held, also precluded summary judgment on the common-law fraud claim. *Id*. at 813-15.

In June 2008, five days before trial was scheduled to begin, the court *sua sponte* issued an order cancelling trial and granting summary judgment in favor of Hawley on the three remaining claims. *United States v. Hawley*, 566 F. Supp. 2d 918 (N.D. Iowa 2008). The court concluded that in light of the Supreme Court's decision in *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), issued earlier that month, the government's remaining FCA claims failed as a matter of law. Turning first to the § 3729(a)(2) claim, the court noted that under *Allison Engine*, the government was required to prove that Hawley intended the government to rely on the false documents as a condition of reimbursing NCCI. *Id.* at 2130. The court found that because the government had failed to make that showing, and because there was no evidence that the false documents were ever forwarded to or approved by the government, Hawley could not be liable under § 3729(a)(2). 566 F. Supp. 2d at 926-27. The court next addressed the government's § 3729(a)(3) claim, noting that it was premised on an agreement or conspiracy to engage in the same conduct that the government alleged violated § 3729(a)(2). Borrowing its analysis under § 3729(a)(2),

the court concluded that the government's evidence showed at most that Hawley and his alleged coconspirators agreed to defraud NCCI, not the government. *Id.* at 927-28. Finally, repudiating its earlier April 2008 order, the court determined that the common-law fraud claim also failed, on the ground that there was no evidence that Hawley had reason to expect that the misrepresentations would reach the government, or that those misrepresentations would influence the government's decision to reimburse NCCI. *Id.* at 932.

The government appealed the grant of summary judgment in favor of Hawley on its FCA and fraud claims. On May 20, 2009, after briefing and oral argument in this case, Congress amended the language of § 3729(a) and redesignated subsections (a)(1) through (a)(3) as (a)(1)(A) through (a)(1)(C). The government acknowledges that the amendments to subsections (a)(1) and (a)(3) do not affect the analysis, but contends that the amendment of subsection (a)(2), codified at § 3729(a)(1)(B), should be applied in this case.

We review the grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the government, the nonmoving party. *Green v. City of St. Louis*, 507 F.3d 662, 666 (8th Cir. 2007). Summary judgment is appropriate if there is no genuine issue as to any material fact, and Hawley is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

II.

Section 3729(a)(1) provides that any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval" is liable to the United States for civil penalties and treble damages. 31 U.S.C. § 3729(a)(1), *amended by* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a)(1), 123 Stat. 1617, 1621-22 (2009). A "claim" is defined as:

any request or demand . . . for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

*Id.* § 3729(c).[2]  Thus, under the plain language of § 3729(a)(1), claims must be presented to an officer or employee of the government before liability can attach. *Allison Engine*, 128 S. Ct. at 2129; *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 490 (D.C. Cir. 2004) (Roberts, J.).  But a "claim" need not be made directly to the government; it may include a "request or demand that was originally made to a contractor, grantee, or other recipient of federal funds and then forwarded to the Government."  *Allison Engine*, 128 S. Ct. at 2129 n.1 (internal quotation omitted).

The government argues that there is a submissible case on its claim under § 3729(a)(1), because a jury could find that Hawley *caused* false claims to be presented to the FCIC.  The government points to the following sequence of events: (1) Hawley signed and submitted crop insurance applications and acreage reports in the names of farmers who were not eligible for such policies; (2) NCCI issued federally reinsured policies to those farmers on the basis of those documents; (3) the farmers filed claims with NCCI for losses to the insured crops; (4) NCCI paid the farmers for the claimed losses; and (5) NCCI, in turn, submitted electronic requests for reimbursement to the FCIC in the amounts that NCCI paid to the farmers.  This sequence, the government asserts, involved two sets of "claims" within the meaning of the FCA.  The first encompassed the claims for payment submitted by the ineligible

_____

[2]Congress amended § 3729(a)(1) and the definition of "claim" in the recent amendments to the FCA.  Pub. L. No. 111-21, § 4(a)(2), 123 Stat. 1617, 1622-23 (2009).  This case is not governed by those changes, as they apply only to conduct after May 20, 2009.

farmers to NCCI, and the second included the claims for reimbursement submitted electronically by NCCI to the FCIC. According to the government, the second set was presented to the FCIC, and Hawley caused those claims to be presented.

Hawley responds that the government is raising a new argument on appeal by identifying the electronic reimbursement demands from NCCI to the FCIC as the "claims" that were presented to the FCIC. Hawley says that the "claims" pleaded and argued by the government in the district court were the claims for payment submitted to NCCI, not the electronic requests for reimbursement from NCCI to the FCIC. Alternatively, Hawley asserts that even if the government preserved a contention that the electronic reimbursement demands were the "claims" presented to the FCIC, it has failed to produce evidence of those electronic demands.

We are satisfied that the government adequately preserved its argument that NCCI's reimbursement demands were the "claims" presented to the government. There are sufficient references in the government's complaint and summary judgment papers to assure us that the government is not unfairly switching gears on appeal. The complaint made clear that the FCIC reimbursed NCCI for the payments it paid to the Windquists and Marshall, thus implying that NCCI presented information related to those payments to the FCIC to trigger the reimbursement. The government argued in its response to Hawley's motion for summary judgment that Hawley "submitted the false claims to NCCI," and that NCCI "submitted the claims directly to the Federal Crop Insurance Corporation," calling this "'presentment' in its purest form." In the government's reply to Hawley's opposition to the government's summary judgment motion, the government asserted that it was "undisputed that NCCI submitted [the false documents] for crop losses" to the FCIC for payment. And in that same reply, the government asserted that false documents were "submitted to NCCI and the loss data was remitted to the government electronically for reimbursement." In view of these references, we are satisfied that the government is not raising a new theory on appeal.

The government has the burden to prove that Hawley presented, or caused to be presented, a false claim to the United States government. *Totten*, 380 F.3d at 490. The FCIC is a wholly owned government corporation, and the parties do not dispute that if false claims were presented to the FCIC, they were presented to the government. Viewing the evidence in the light most favorable to the government, we conclude that the record demonstrates a genuine issue of material fact as to whether claims were transmitted electronically by NCCI to the FCIC, and thus presented to the government.

Calvin Brewer, an official of the United States Department of Agriculture, testified in his deposition about the reimbursement system between private insurance companies and the FCIC. Brewer explained that after the insurance company assesses the loss to the insured crops, the company writes a check to the farmer for a certain amount. The check is tied to a "loss clearing account" in the company's name. The company then submits data regarding the loss amount to the FCIC through an electronic "data acceptance system." According to Brewer, once the company submits the data to the system electronically:

> they look at a couple [of] minor edits, financial edits they call them, that there is a policy that you're trying to claim a loss on and that the detail loss records add to the total loss record. If that happens, then . . . escrow will pick up – the escrow system will pick up that request the next day and process it and you'll be – we'll actually generate a payment and do a[n] [electronic funds transfer] to transfer the money to an escrow account in the [FCIC's] name.

Brewer testified that at this point, the money is in an escrow account in the FCIC's name. When the farmer goes to the bank to cash the check he received from the company, the bank transfers the total amount of the check from the FCIC's escrow account to the company's loss clearing account to cover the loss amount. At some point after this transfer takes place, the FCIC and the insurance company undergo an

annual settlement to determine what percentage, if any, of the loss reimbursed by the FCIC should instead be borne by the company under the terms of the SRA.

In addition to Brewer's testimony, the SRA mandates that the company submit "accurate and detailed contract data" to the FCIC through the electronic data acceptance system. The SRA also requires that "[a]ll reports submitted for reimbursement must be certified."

We conclude that this evidence creates a genuine issue of material fact regarding whether Hawley caused NCCI to present claims for reimbursement to the FCIC. There is enough in the record for a factfinder reasonably to conclude that the requests for payment originally submitted to NCCI were forwarded in some form to the FCIC. *See Allison Engine*, 128 S. Ct. at 2129 n.1. Brewer's testimony indicates that an electronic data communication from NCCI to the FCIC triggers a release of funds from the FCIC to an escrow account at a local bank from which a farmer can obtain payment on his claim. The SRA indicates that the NCCI also must submit certified reports for reimbursement to the FCIC. Brewer testified that there is an annual settlement process in which the government determines whether any of the payments made by the FCIC should be recouped from the insurance company, thus suggesting that the claims process and final "approval" by the government is not completed until after that reconciliation. Thus, while the government might well have amplified the summary-judgment record regarding presentment, this is not a case in which there has been "a complete failure of proof concerning an essential element" of the government's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Accordingly, we conclude that there is a genuine issue of fact on the question whether Hawley caused presentment of a claim, and that the government's § 3729(a)(1) allegation should not have been dismissed based on lack of evidence of presentment.

III.

The government next argues that the district court erred in granting summary judgment in favor of Hawley on its claim under § 3729(a)(2). Section 3729(a)(2) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." As discussed, after oral argument in this case, Congress amended and recodified § 3729(a)(2). The amended statute makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). According to the government, the amended statute removes the element requiring proof of intent to defraud the government, and thus strengthens the government's case for reversal on the § 3729(a)(2) claim. The amended provision, redesignated as § 3729(a)(1)(B), applies to "all claims under the False Claims Act" pending on or after June 7, 2008. Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (2009).

Several courts have concluded, however, that § 3729(a)(1)(B) does not apply to all *claims in lawsuits* that are pending after June 7, 2008, but only to "claims" within the meaning of the FCA that were still pending as of that date. *E.g.*, *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 n.3 (11th Cir. 2009); *United States ex rel. Burroughs v. Cent. Ark. Dev. Council*, No. 4:08CV2757, 2010 WL 1875580, at * 2 (E.D. Ark. May 10, 2010); *United States v. Sci Applications Int'l Corp.*, 653 F. Supp. 2d 87, 107 (D.D.C. 2009). On that view, the new statute does not apply to this case, because any claim for payment made to the FCIC had been resolved prior to June 7, 2008. The parties have not addressed this question of statutory interpretation, and we find it unnecessary to resolve it.[3] We conclude that the government's claim under

_____

[3]The parties do dispute whether retroactive application of § 3729(a)(1)(B) would violate the Constitution. Hawley argues that applying the new provision to his conduct would constitute retroactive punishment in violation of the Ex Post Facto Clause, U.S. Const. art. I, § 9, because the treble damages provided for in the FCA,

§ 3729(a)(2) is sufficient to survive summary judgment without regard to the amendment.

The district court ruled that the § 3729(a)(2) claim was not submissible in light of *Allison Engine*, because there was no evidence that Hawley intended that the false insurance applications and acreage reports would be material to the government's decision to pay or approve the false claims. In *Allison Engine*, two shipyards contracted with the United States Navy to build destroyers in accordance with military standards. 128 S. Ct. at 2126. The shipyards then contracted with three subcontractors, including Allison Engine, to assemble and manufacture certain parts used in the destroyers. *Id.* at 2126-27. All of the money used to pay the subcontractors ultimately came from the United States Government. *Id.* at 2127. Two *qui tam* relators sued the subcontractors to recover damages under § 3729(a)(1), (a)(2), and (a)(3), alleging that they submitted false invoices to the shipyards and fraudulently sought payment for work that did not comply with the specified military standards. *Id.* The court of appeals held that the plaintiffs established liability merely by showing that "[t]he false statement's use . . . result[ed] in obtaining or getting payment or approval of the claim," *United States ex rel. Sanders v. Allison Engine Co.*, 471 F.3d 610, 621 (6th Cir. 2006), or that "government money was used to pay the false or fraudulent claim." *Id.* at 622.

---

31 U.S.C. § 3729(a)(1), are essentially punitive or criminal in nature. Hawley also contends that retroactive application of § 3729(a)(1)(B) would violate the Due Process Clause, because it would deprive defendants of fair notice that their conduct violates the criminal law. The government, citing *Hudson v. United States*, 522 U.S. 93 (1997), responds that the Ex Post Facto Clause applies only to criminal or penal provisions, and the FCA is by its terms a civil statute mandating civil penalties. The government also argues that retroactive application would not violate the Due Process Clause, because the retroactivity is rationally related to a legitimate government purpose. If the government elects on remand to pursue retroactive application of § 3729(a)(1)(B), then the district court should consider the statutory and constitutional questions in the first instance.

-12-

The Supreme Court reversed and held that to establish liability under § 3729(a)(2) and (a)(3), an FCA plaintiff must prove that the "defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Allison Engine*,128 S. Ct. at 2126. This is so, the Court explained, because the phrase "to get" in the statute "denotes purpose," and so "a person must have the purpose of getting a false or fraudulent claim 'paid or approved by the Government.'" *Id.* at 2128 (quoting 31 U.S.C. § 3729(a)(2)). "Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." *Id.* at 2130. By contrast, "[i]f a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim 'by the Government.'" *Id.* In the latter situation, the "direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability." *Id.*

Applying the reasoning of *Allison Engine*, we conclude that the government made a sufficient showing of intent under § 3729(a)(2) to survive summary judgment. The record shows that Hawley had extensive experience in the crop insurance industry. He worked as a crop insurance adjuster for NCCI and another insurance agency before starting his own crop insurance agency in 1994. From 1994 to 2001, he worked as a private crop insurance agent for NCCI, selling *federally reinsured* crop insurance policies. He also worked occasionally as a teacher for NCCI, instructing insurance agents about insurance coverage. In his sworn affidavit, he averred that "[m]y familiarity is with crop insurance."

Drawing all justifiable inferences in the government's favor, we believe a reasonable jury could find that Hawley intended, based on his experience selling federally reinsured crop insurance for NCCI, that NCCI would transmit a farmer's

claim to the FCIC for reimbursement, and the FCIC would rely on that claim as a condition of payment. *Cf. United States v. Hawley*, 544 F. Supp. 2d 787, 815 (N.D. Iowa 2008). This sequence closely resembles the subcontractor analogy described in *Allison Engine*, namely, that a subcontractor is liable under § 3729(a)(2) if he submits a false statement to a prime contractor intending for the statement to be used by the prime contractor to get the government to pay the prime contractor's claim. *Id.* at 2130.

*Allison Engine* suggests that a defendant should answer under the statute for "the natural, ordinary and reasonable consequences of his conduct," *id.* (internal quotation omitted), and a reasonable factfinder typically may infer that a person intends the ordinary consequences of his voluntary acts. *See Willis v. State Farm Fire & Cas. Co.*, 219 F.3d 715, 719 (8th Cir. 2000); *United States v. Martin*, 772 F.2d 1442, 1445-46 (8th Cir. 1985). The record here creates a genuine issue for trial on whether Hawley knew that a natural and foreseeable consequence of his submission of false insurance applications and acreage reports to NCCI was that NCCI would use those submissions to get the FCIC to pay NCCI's claims, and that Hawley intended these natural and foreseeable consequences. We therefore conclude that summary judgment is not warranted on the government's claim under § 3729(a)(2).

We next address whether the government offered sufficient proof to survive summary judgment on its § 3729(a)(3) claim. The analysis of § 3729(a)(3) is similar to the analysis under § 3729(a)(2), as both provisions require evidence that the defendant intended the government to rely on the false statement as a condition of payment. *Allison Engine*, 128 S. Ct. at 2130. Section 3729(a)(3) also requires evidence of an agreement to defraud the government. *Id.* The district court determined in its first order on motions for summary judgment that genuine issues of material fact remained as to whether Hawley and others knowingly agreed to participate in a scheme to allow ineligible farmers to obtain and make claims against federal crop insurance policies. The court did not repudiate this conclusion in its

order cancelling trial, and Hawley does not argue that there is insufficient evidence of an agreement to defraud the FCIC. He contends only that the government cannot prevail under § 3729(a)(3) for the same reason that it cannot prevail under § 3729(a)(2) – namely, that Hawley did not intend to defraud the government. Having rejected that contention, we conclude that summary judgment is not warranted on the government's § 3729(a)(3) claim.

IV.

The government's final contention is that the district court erred in granting summary judgment in favor of Hawley on its common-law claim of fraud. Under Iowa law, "[t]he elements of fraud are: (1) a material misrepresentation (2) made knowingly (scienter) (3) with intent to induce the plaintiff to act or refrain from acting (4) upon which the plaintiff justifiably relies (5) with damages." *Beeck v. Kapalis*, 302 N.W.2d 90, 94 (Iowa 1981). The district court concluded that the government could not satisfy the fourth element of the cause of action, because the government could not show that Hawley intended or had reason to expect that the false statements would be communicated to the FCIC, or that those statements would influence the FCIC's decision to reimburse NCCI. The government disputes that conclusion, arguing that Hawley plainly had reason to expect, based on his experience, that a consequence of his conduct was that NCCI would seek reimbursement from the FCIC, and that NCCI would necessarily represent to the FCIC that the underlying insurance policies were valid. We agree with the government.

In *Clark v. McDaniel*, 546 N.W.2d 590 (Iowa 1996), the Supreme Court of Iowa discussed "justifiable reliance" in the context of fraudulent misrepresentations made to third parties. *Id.* at 593-94. The Court expressly adopted section 533 of the Restatement (Second) of Torts (1977), *id.* at 594, which states:

[t]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

*Id.* at 593 (internal quotation omitted). The court elaborated on the "reason to expect" standard, explaining that "[t]he maker of the misrepresentation must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach [third] persons and . . . influence their conduct." *Id.* (internal quotation omitted).

We conclude that the record creates genuine issues of material fact regarding whether Hawley had reason to expect that the representations set forth in false insurance applications and acreage reports that he signed and submitted would reach the FCIC and influence the FCIC's decision to reimburse NCCI. As noted, Hawley had extensive experience as a crop insurance adjuster and private agent selling federally reinsured crop insurance policies in NCCI's name. Based on that experience, there are fact questions as to whether he knew that NCCI would communicate false representations to the FCIC, because NCCI, when seeking reimbursement, would necessarily represent to the FCIC that the claims arose from persons eligible for crop insurance. Indeed, a basic premise of the SRA between NCCI and the FCIC is that NCCI will insure only eligible individuals, and that the FCIC will reimburse only valid claims. Thus, although the insurance applications and acreage reports were not themselves forwarded to the FCIC, a jury could find that Hawley had reason to expect that the representations included in those documents – namely, that the farmers were eligible for insurance – would be passed on to the FCIC by NCCI. On the same basis, it is reasonable to infer that Hawley had reason to expect that the FCIC would rely on the farmers' purported eligibility in deciding to

-16-

reimburse NCCI. Accordingly, summary judgment is not warranted on the government's common-law fraud claim.

*       *       *

For the foregoing reasons, we reverse the district court's grant of summary judgment on the government's claims under 31 U.S.C. § 3729(a)(1), (a)(2), and (a)(3), and under the Iowa common law of fraud, and remand for further proceedings consistent with this opinion.

_____