# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2164

_____

Bottoms Farm Partnership; Bell Family Partnership; Bell Planting Co.; Nez Farms, Inc.

*Plaintiffs - Appellants*

v.

Sonny Perdue, Secretary, United States Department of Agriculture; Risk Management Agency; Federal Crop Insurance Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 15, 2018
Filed: July 17, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Bottoms Farm Partnership, Bell Family Partnership, Bell Planting Company, and Nez Farms, Inc. ("Appellants" or "farm entities") appeal from a grant of summary

judgment by the district court[1] deferring to an insurance policy interpretation made by the Federal Crop Insurance Corporation ("FCIC") and a determination regarding the FCIC's authority made by the Risk Management Agency ("RMA"). We affirm.

## I. Background

The Appellants are rice farmers in southeast Missouri. They each planted rice in Stoddard County during the 2012 crop year. The rice crops were insured under federally-reinsured multi-peril crop insurance policies purchased from Rural Crop Insurance Services ("RCIS"). The insurance policy was provided under the auspices of the Federal Crop Insurance Act ("FCIA" or "Act"), which is administered by the FCIC and the RMA.

After the farm entities purchased the insurance and planted the 2012 crop, their rice crops were damaged by excessive rainfall in Stoddard County. The farm entities filed claims for indemnity with RCIS. RCIS denied the claims on the ground that the crops were not insurable under the policy because levees were not surveyed and constructed immediately after seeding the rice and levee gates were not immediately installed and butted as required by a special provision in the policy. The special provision states:

> In addition to the definition of Planted Acreage specified in section 1 of the Crop Provisions, the following must have occurred immediately following seeding. If these activities have not occurred, the acreage will be considered "acreage seeded in any other manner" and will not be insurable:
>     1. levees are surveyed and constructed;
>     2. levee gates are installed and butted; and

---

[1]The Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(a).

3.     the irrigation pump is operable, ready to be started in the event sufficient rainfall has not been received, and turned on to provide sufficient water for the purposes of germination or elimination of soil crusting.

When the farm entities' claims were denied, they sought arbitration with RCIS as was mandated by the Basic Provisions of the policy.  In their arbitration request, they each stated their proposed interpretation for consideration. After considering the arguments of the parties, the FCIC agreed with RCIS's interpretation and provided the following explanation:

> Any time a term is not defined in the policy, its common meaning is used and that is found in any standard dictionary. The Merriam-Webster dictionary defines "immediately" as "without any delay."  This means the listed activities must occur right after planting has ended, weather permitting, without any delay.  If weather prevents these activities, they must commence as soon as the weather permits.
>
> Therefore, FCIC does not agree with the [Appellant]'s interpretation that the Special Provisions only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for purposes of germination or the elimination of soil crusting, be in place immediately following seeding.  FCIC also does not agree that interior levees do not have to be installed immediately following planting in order for the acreage to be insurable.
>
> The Special Provisions statement specifies what activities must occur immediately following seeding[.] . . . .
>
> These are specific activities that must occur on the insurable acreage each year.  These are not requirements that only need to occur if the situation arises that requires the irrigation.  The requirement is to conduct these activities immediately after planting and are not governed by the requirement that the producer follow good farming practice.  This

is a condition of insurability, not an issue of whether the producer followed good farming practices.

The farm entities requested a review of the FCIC's interpretation to the RMA. The RMA found no error in the FCIC's interpretation. The National Appeals division concluded that RMA's written interpretation was not appealable. With their administrative remedies exhausted, the farm entities filed a complaint in district court, which gives rise to this appeal. On appeal, the farm entities ask us to reverse the district court and to set aside the FCIC's interpretation. In the alternative, they seek to set aside the RMA's determination that the FCIC had authority to issue a binding interpretation of the special provision. We have searchingly reviewed the record and, giving due deference to the expert authority of the FCIC and the RMA, we affirm.

## II.    Discussion

### A.    Standard of Review and Statutory Guidance

"We review the district court's judgment de novo." Clark v. United States Dep't of Agriculture, 537 F.3d 934, 939 (8th Cir. 2008) (citing Central South Dakota Co-op. Grazing Dist. v. Sec'y of the U.S. Dep't of Agriculture, 266 F.3d 889, 894 (8th Cir. 2001)). Like the district court, we have limited authority to review decisions of administrative agencies. 5 U.S.C. § 706(2). We may set aside the decisions of the FCIC and the RMA only if we find them to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C); Clark, 537 F.3d at 939.

When we review "an agency's construction of the statute which it administers," we confront two questions:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). "Where Congress has established a clear line, the agency cannot go beyond it; and where Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow." City of Arlington v. F.C.C., 569 U.S. 290, 307 (2013). "If 'the agency's answer is based on a permissible construction of the statute,' that is the end of the matter." Id. (citing Chevron, 467 U.S. at 842).

Congress established the federal crop insurance program in 1938 to "improv[e] the economic stability of agriculture." United States v. Hawley, 619 F.3d 886, 888-89 (8th Cir. 2010) (quoting 7 U.S.C. § 1502(a)). "The Federal Crop Insurance Act (FCIA), 7 U.S.C. § § 1501-1524," provided that the crop insurance program would be "administered and regulated by the FCIC," a wholly owned government corporation within the United States Department of Agriculture. Ace Property and Casualty Ins. Co. v. Federal Crop Ins. Corp., 440 F.3d 992, 994 (8th Cir. 2006) (citing 7 U.S.C. § 1503); Hawley, 619 F.3d at 889 (citing § 1502(a) and 7 C.F.R. § 400.701). The RMA "administers the federal crop insurance program on behalf of the FCIC." Hawley, 619 F.3d at 889; 7 U.S.C. § 6933.

The FCIA provides that the management of the FCIC "shall be vested in a Board of Directors subject to the general supervision of the Secretary" of Agriculture. 7 U.S.C. § 1505(a)(1). The Act specifies what types of expertise must be represented

-5-

in the Board's composition.  7 U.S.C. § 1505(a)(2).  The Act provides for "[e]xpert review of policies, plans of insurance, and related material."  7 U.S.C. § 1505(e).  Congress allocated to the FCIC "such powers as may be necessary or appropriate for the exercise of the powers . . . specifically conferred upon" it by the FCIA "and all such incidental powers as are customary in corporations generally."  7 U.S.C. § 1506(k).

Congress allocated to the FCIC powers that are customarily vested in corporations.  In describing the Corporation's authority to offer insurance, Congress specified: "If sufficient actuarial data are available (as determined by the Corporation), the Corporation may insure, or provide reinsurance for insurers of, producers of agricultural commodities grown in the United States under 1 or more plans of insurance determined by the Corporation to be adapted to the agricultural commodity concerned."  7 U.S.C. § 1508(a)(1).  The Act specifies the administrative process for resolving issues of "good farming practices" that may arise under a federal crop insurance policy. 7 U.S.C. § 1508(a)(3)(B).  An administrative decision regarding whether a producer failed to follow good farming practices "may not be reversed or modified as the result of judicial review unless the determination is found to be arbitrary or capricious."  7 U.S.C. § 1508(a)(3)(B)(iii)(II).

Congress requires the FCIC to offer "[s]pecial provisions for . . . rice."  7 U.S.C. § 1508(a)(8).  Specifically, the Act requires: "Notwithstanding any other provision of this subchapter, beginning with the 2001 crops of . . . rice, the Corporation shall offer plans of insurance, including prevented planting coverage and replanting coverage, under this subchapter that cover losses of . . . rice resulting from failure of irrigation water supplies due to drought and saltwater intrusion."  Id.

**B.    FCIC Interpretation of Special Policy Language**

The clear language of the FCIA indicates that Congress intended the Corporation to have extensive and broad authority.  Under the Act judicial review is available but limited.  Given the Act's broad grant of authority to the Corporation, and the specific authority over the provisions of insurance and insurance contracts found in 5 U.S.C. §§ 1505 and 1506, we conclude that we must give substantial deference to the FCIC's interpretation of the special provision.  Rain & Hail Ins. Service, Inc. v. Federal Crop Ins. Corp., 426 F.3d 976, 979-80 (8th Cir. 2005) (giving substantial deference to an agency's interpretation because of the agency's delegated authority).

The FCIC's interpretation of the special provision is consistent with the plain reading of the policy, which indicates that the activities listed must "have occurred immediately following seeding" or the acreage will be considered to be uninsurable. The FCIC's decision that the language provided a condition for insurability and was not subject to an analysis of good farming policy is not plainly erroneous. Id. at 979. Further, the interpretation is not "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A), especially in view of the substantial deference we give to the [FCIC] in this circumstance." Id. at 980 (citations omitted).  The interpretation is based on a permissible construction of the policy language which was promulgated by the Corporation under its statutory authority.

**C.    RMA Determination of FCIC Authority**

The plain language of section 20(a)(1) of the farm entities' crop insurance policy required that the parties' dispute in this matter be subject to mediation and arbitration.   The policy required the parties to present their disagreement over the interpretation of policy language to the FCIC.  Section 20(a)(1)(i) specifically states:

"Any interpretation by FCIC will be binding in any mediation or arbitration." Considering the plain language of the insurance contract and the deference we must give the RMA in its role of supervisor of the FCIC, we conclude that the RMA's determination that the FCIC was required to provide an interpretation of the special provision to the arbitrating parties was not clearly erroneous, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Rain & Hail, 426 F.3d at 979-80.

## III.   Conclusion

We affirm the judgment of the district court.

_____