# IN THE COURT OF APPEALS OF IOWA

No. 17-1356
Filed March 6, 2019

**CHURCH CROP INSURANCE SERVICES, INC.,**
    Plaintiff-Appellee,

**vs.**

**GEMCAP LENDING I, LLC,**
    Third-Party Interpleader Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson (motion for summary judgment) and Eliza J. Ovrom (trial), Judges.

A third-party creditor appeals the grant of declaratory judgment in favor of the plaintiff in this interpleader action. **REVERSED AND REMANDED.**

Larry J. Brock of Brock Law Office, Washington, for appellant.

Sarah K. Franklin and Sarah E. Crane (until withdrawal) of Davis, Brown, Koehn, Shors & Roberts, PC, Des Moines, for appellee.

Heard by Tabor, P.J., Bower, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**CARR, Senior Judge.**

GemCap Lending I, LLC (GemCap) appeals the district court's grant of declaratory judgment in favor of Church Crop Insurance Services, Inc. (Church Crop). The district court found Crop USA Insurance Agency, Inc. (Crop USA), as a debtor of GemCap, could not pledge as security funds representing commissions it owed to Church Crop. The court ordered the release of the disputed funds to Church Crop. Although we do not fault Church Crop for feeling proprietary about the funds, we think the relevant contracts and Article 9 jurisprudence compel a different result. We find Crop USA had rights in the disputed funds and could legally pledge the funds as security. Therefore, we reverse and remand for further proceedings.

## I.     Background Facts and Proceedings

Church Crop sells federal crop insurance[1] and other crop insurance products. In order to sell crop insurance, Church Crop entered into an

---

[1] The Eighth Circuit Court of Appeals has provided the following background on federal crop insurance:

> In 1938, Congress enacted the Federal Crop Insurance Act [7 U.S.C. sections 1501 to 1524] to "improv[e] the economic stability of agriculture" by establishing a federal crop insurance program. 7 U.S.C. § 1502(a). To implement the program, Congress created the Federal Crop Insurance Corporation [(FCIC)], a wholly owned government corporation within the United States Department of Agriculture. *Id.* § 1503; 7 C.F.R. § 400.701. In 1996, Congress created the Risk Management Agency [(RMA)], which administers the federal crop insurance program on behalf of the FCIC. We refer to the FCIC and the RMA jointly as the FCIC.

"Independent Agent Contract" with Crop USA in 2010.[2] Under the "Independent Agent Contract," Church Crop is authorized to solicit applications for insurance coverage for certain insurers contracted with Crop USA. Crop USA in turn is obligated to pay commissions to Church Crop based on premiums generated when these applications result in placement of a policy. Thereafter, Crop USA entered into a "Sales Agent–Company Agreement" with Diversified Crop Insurance Services (Diversified). As a result of these agreements, Church Crop was authorized to write crop insurance policies with Diversified through Crop USA, Diversified was required to pay compensation to Crop USA for these policies, and Crop USA was required to pay the appropriate commissions to Church Crop. Angela Church, president of Church Crop, testified Crop USA paid all commissions due to Church Crop for 2011 and 2012 and part of the commissions due for 2013.

GemCap makes asset-based loans to small-to-medium-sized businesses. In 2011, GemCap and Crop USA entered into a "Loan and Security Agreement."[3]

---

The FCIC contracts with approved private insurance companies to offer crop insurance policies to eligible farmers. 7 U.S.C. § 1502(b)(2). Under the program, farmers purchase policies from the designated private insurance companies, and insurance agents receive commissions for the policies they write for those companies. Those companies are in turn reinsured by the FCIC in accordance with the terms of a standard reinsurance agreement [(SRA)]. Thus, when a farmer incurs a loss to an insured crop, the farmer files a claim with the private insurance company. The insurance company assesses the amount of the loss, pays the farmer's claim for damage, and then seeks reimbursement from the FCIC. The FCIC reimburses the company for all or part of the amount paid to the farmer, depending on the particular arrangement set forth in the SRA. The FCIC also subsidizes a portion of the premiums paid by the insured farmers.

*U.S. v. Hawley*, 619 F.3d 886, 888–89 (8th Cir. 2010).

[2] The "Independent Agent Contract" states it "shall be construed in accordance with the laws of the State of Idaho."

[3] The "Loan and Security Agreement" states it "SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA."

Under the agreement, GemCap agreed to lend money to Crop USA. As collateral, Crop USA agreed to convey to GemCap "a first priority continuing security interest in and Lien upon all now owned and hereafter acquired property and assets of [Crop USA] and the Proceeds and products thereof." GemCap and Crop USA subsequently entered into an "Amended and Restated Loan and Security Agreement," which granted GemCap a security interest in the same property. Crop USA also authorized GemCap to withdraw funds from all of its deposit accounts. As part of their agreements, Diversified paid commissions and certain subsidies into an account—called a "blocked account"—under the control of Gemcap. To this end, Crop USA executed a "BLOCKED ACCOUNT CONTROL AGREEMENT," instructing the depository bank that GemCap has a security interest in and "sole dominion and control" of the blocked account.

At trial, Ray Johnson Taylor, president of Crop USA, testified sales of crop insurance policies "occur long before the receipt of the commissions," and Crop USA entered into the agreements with GemCap as "a financing arrangement for that interim period." Taylor explained between that, as Crop USA had done with previous lenders, Crop USA would draw from its line of credit with GemCap to pay its obligations: "Pay bills, pay commissions, pay salaries," including its contractual obligations with Church Crop and its other sales agents. He agreed with counsel that the blocked-account agreement meant "monies that were due from Diversified to Crop USA under its contract were paid by wire transfer by Diversified into a controlled account, controlled by GemCap," and "GemCap was entitled to take all funds that were wire-transferred into the blocked accounts."

In 2013, GemCap issued a notice of default to Crop USA, claiming Crop USA had violated several of its obligations under the loan, including failing to make required payments, using loan funds for unauthorized purposes, and misrepresenting material facts. After providing notice of its right to accelerate the loan, GemCap filed suit against Crop USA and several other defendants in California federal district court asserting breach of the loan agreement and other claims. *See Gemcap Lending I LLC v. Crop USA Ins. Agency Inc.*, CV 13-05504 SJO (MANx), 2015 WL 12746212, at *2 (C.D. Cal. Aug. 17, 2015). The court soon issued a temporary restraining order followed by a preliminary injunction, both barring Diversified from distributing any proceeds potentially owed to Crop USA or its agents or subagents during the action. *See id.* In 2014, GemCap reached a confidential settlement with some of the defendants. *See id.* at 3. GemCap then sought release of the enjoined funds, which the court denied on multiple occasions. *See id.* On August 17, 2015, the court determined it could not identify the lawful recipients of the enjoined funds in the action before it, and it dissolved the preliminary injunction without ordering Diversified to release the enjoined funds. *See id.* at *7–8.

On October 3, 2014, during the California litigation, Church Crop filed a petition in Iowa district court against Crop USA and Diversified seeking a temporary injunction—which the court granted—preventing the defendants from transferring any funds representing the commissions owed to it. Church Crop then filed a petition for declaratory judgment, asking the court to determine its unpaid commissions are neither the property of Crop USA nor subject to any encumbrances by GemCap. Diversified filed a counterclaim, cross-claim, and

third-party interpleader petition naming Chuch Crop, GemCap, and Crop USA and requesting a determination of the rights of the parties with respect to certain funds in its possession. Diversified later filed a motion for leave seeking to place with the court "$545,767.31 in commissions and underwriting gains, after accounting for all premium and other contractually permitted or required offsets, payable to Crop USA as a result of policies placed through Crop USA by [Church Crop] for crop year 2013" (the Diversified funds). The court granted Diversified's motion to deposit the funds, and trial was held May 3 and 4, 2017. On June 21, the court issued its "Ruling and Order" finding Crop USA had no rights in the Diversified funds. Therefore, the court found GemCap could not encumber the commissions, and it released the Diversified funds to Church Crop. GemCap now appeals.

## II. Standard of Review

At the outset, the parties disagree about the standard of review. Our "review of a declaratory judgment action depends upon how the action was tried to the district court." *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). "To determine the proper standard of review, we consider the 'pleadings, relief sought, and nature of the case [to] determine whether a declaratory judgment action is legal or equitable.'" *Id.* (quoting *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006)).

Multiple factors indicate this case was tried at law below. The outcome depends on the interpretation of contracts and statutes. *See id.* at 179. The court ruled on objections at trial. *See id.* The court issued a "Ruling and Order" and not a "Decree." *See id.* at 178. Therefore, we find the case was tried at law. *See id.* We review cases tried at law for errors at law. *See id.* at 179. "Under this standard

of review, the trial court's findings carry the force of a special verdict and are binding if supported by substantial evidence. We are not, however, bound by the trial court's legal conclusions." *Id.*

### III. Analysis

The district court framed the issue before it as "whether Crop USA could legally pledge as security all payments received from Diversified, which included the commissions owed to Church Crop, under the California Uniform Commercial Code." California Commercial Code section 9203 (2013) places several requirements and conditions on the attachment and enforceability of a security interest. One of those requirements is, "The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party."[4] Cal. Com. Code § 9203(b)(2); *see also id.* § 9203 cmt. 6 ("[I]n accordance with basic personal property conveyancing principles, the baseline rule is that a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be."). The Code "does not define the term 'rights in the collateral.'" *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1103 (9th Cir. 1997). However, "[w]here a debtor has rights to collateral beyond naked possession, a security interest may attach to such rights." *Id.*; *see also* Larry Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 9-203:205 (3d ed.) ("The fact that the owner of property is subject to a duty to a third person with respect to the property does not negate the existence of the owner's rights in the property. It merely means that the rights are less than full title.").

---

[4] Iowa, having enacted the Uniform Commercial Code, has a similar statute. *See* Iowa Code § 554.9203(2)(b) (2013).

Beyond question, Church Crop had a contract right to be paid commissions they earned writing policies with Diversified through Crop USA, and Crop USA was contractually obligated to pay commissions to Church Crop. However, as the district court stated, the issue is "whether Crop USA could legally pledge as security all payments received from Diversified." We find Crop USA could do so. Church Crop has not shown any statute or rule denying Crop USA rights to payments coming directly from Diversified or otherwise preventing it from granting a security interest in such funds. No contract exists between Church Crop and Diversified that could deny Crop USA rights to payments from Diversified. The "Sales Agent—Company Agreement" between Diversified and Crop USA is silent on Church Crop or any other agent of Crop USA, and the only payments from Diversified this agreement addresses is the "Agency Compensation" payable to Crop USA. The "Independent Agent Contract" between Church Crop and Crop USA does not affect the rights of payments coming directly from Diversified, and it explicitly makes Crop USA solely responsible for commissions to Church Crop:

> So long as this contract remains in full force and effect, *[Crop USA] will pay commissions on premiums received by the Insurer* and recorded by us on coverage issued from applications procured by you in accordance with the attached Commission Schedule, and subject to the provisions of this contract. Commission payments shall be calculated at the percentage rates listed in your Commission Schedule. The Commission Schedule may be supplemented or amended by us from time to lime.
>
> The commissions payable under this contract shall be compensation in full for all applications written by [Church Crop], for all services performed by [Church Crop], and for all expenses incurred. *It is expressly understood that [Crop USA is] solely responsible for all commissions to which [Church Crop] may be entitled pursuant to this contract and that the Insurers represented by [Crop USA] and listed in the attached Commission Schedule have no obligation to [Church Crop] for any commissions, expense*

*allowances, or any other form of compensation whatsoever for [Church Crop's] performance under the terms of this contract.*

(Emphasis added.)

Church Crop points to language from the "Independent Agent Contract" stating its commissions are paid "on premiums received by the Insurer." The district court found this language recognized Crop USA was a mere intermediary that passed commissions from Diversified to Church Crop. Such an interpretation ignores language in the next paragraph stating "that [Crop USA is] solely responsible for all commissions to which [Church Crop] may be entitled." This language directly contradicts any interpretation that Crop USA was only a conduit for commissions from Diversified. When reading the contract as a whole, the language requiring Crop USA to "pay commissions on premiums received by the Insurer" reflects its obligation to pay commissions based on the compensation schedule and calculated using the amounts of premiums Diversified received.

Church Crop notes a California court has found a debtor had no interest in its account to grant a security interest where a claimant can trace the funds back to proceeds that were due it. *Oxford St. Props., LLC v. Rehab. Assocs., LLC*, 141 Cal. Rptr. 3d 704, 713 (Cal. Ct. App. 2012). However, there the court also found the debtor had no right to pledge the disputed proceeds as security because the security agreement with the creditor was never intended to cover the disputed proceeds. *Id.* As explained above, no statute, rule, or contract denies Crop USA rights to the Diversified funds. Additionally, while the "Sales Agent—Company Agreement" requires Crop USA to "maintain a monthly account of [Church Crop's]

commissions," the Diversified funds at issue here come directly from Diversified and not from a separate account of commissions for Church Crop.

Church Crop asserts additional evidence indicates the parties intended for it to have the sole right to funds representing its commissions that come directly from Diversified. We only consider additional evidence if the contract is ambiguous. *See Knipe Land Co. v. Robertson*, 259 P.3d 595, 601 (Idaho 2011) ("Where a legal instrument is found to be unambiguous the legal effect must be decided by the district court as a matter of law; it is only when the instrument is found to be ambiguous that evidence as to the meaning of that instrument may be submitted to the finder of fact."). We find no ambiguity in the contracts as to the parties' rights to the Diversified funds. Therefore, we need not consider this additional evidence. *See id.*

Even if we were to consider the additional evidence, it would not change our opinion. Diversified prepared a series of commission recaps for Church Crop, showing the amount of commissions owed to Church Crop for crop year 2013. While these recaps show Diversified knew how much in premiums Church Crop generated and how much in commissions these premiums generated, the recaps do not indicate Diversified owed the commissions directly to Church Crop. While Angela Church testified she believed Diversified was required by law to track agent commissions, nothing in the record explains why Diversified provided these commission recaps to Church Crop.[5] As such, the commission recaps are not

---

[5] We note the commission recaps are dated October 27, 2014, less than one month after Church Crop filed its petition for a temporary injunction, and more than a year after Crop USA defaulted on its GemCap obligations.

inconsistent with Crop USA having rights to pledge payments from Diversified as security.

We also note the record includes a letter from Crop USA to Diversified dated November 21, 2011. The letter notifies Diversified of the financing arrangement between Crop USA and GemCap, including the grant of a security interest to GemCap of "all payments, proceeds and other sums to which" Crop USA is entitled under the Sales Agency—Company Agreement between Crop USA and Diversified. The letter asks Diversified to acknowledge that granting a security interest in these payments "does not constitute a default by" Crop USA under their agreement. The accounting manager for Diversified "[a]cknowledged and agreed to" the letter by signing it without addendum. The fact Crop USA sought, and Diversified granted, permission to pledge payments from Diversified as a security interest supports our conclusion that Crop USA had rights in these payments and was not merely acting as a conduit for Church Crop's commissions.

Finally, the district court noted the complaint GemCap filed in federal district court, in which it asserted the role of Crop USA in the crop insurance system "is to collect premiums and to ensure [Crop USA's] agents confirm policyholders make the premium payments from the sale of policies and distribute appropriate commissions to the selling agents, charging a fee for doing so." The district court believed this passage amounts to GemCap recognizing Crop USA was only a conduit for its agents' commissions. We cannot assign such a broad effect to this language, and we do not view this passage as inconsistent with Crop USA having rights to payments from Diversified. GemCap filed this complaint July 30, 2013, well before GemCap and Church Crop entered into any legal action with each

other. Because GemCap filed its federal complaint before it would have reviewed the "Independent Agent Contract" between Crop USA and Church Crop, it could not have fully understood the legal relationship between Crop USA and Church Crop when it filed the federal complaint.

While both parties advance other issues, the only question properly before us is whether Crop USA had the "rights in the collateral" needed to grant a security interest. *See* Cal. Com. Code § 9203(b)(2). We find Crop USA had such rights in the Diversified funds; Crop USA was more than a mere intermediary holding possession without title. *See id.*; *see also Coupon Clearing Serv., Inc.*, 113 F.3d at 1103 (finding the debtor had rights in the disputed funds "that went beyond naked possession, including the rights to receive and retain the [funds], to commingle the [funds] with its general operating funds, to use the [funds] in its operations and to apply the [funds] to any payments made" to claimants). Having concluded, we think in error, that Crop USA did not have rights in the collateral sufficient to grant a security interest, the trial court did not reach the other two elements necessary to prove the Gemcap security interest attached to the Diversified funds in the hands of Crop USA. *See Bank of the W. v. Commercial Credit Fin. Servs., Inc.*, 852 F.2d 1162, 1166 (9th Cir. 1988) (Noting elements of attachment). We confine our opinion to the question presented. We express no opinion about attachment, perfection (including its necessity), or the relative priorities of the parties in the fund on deposit with the court.

## IV.    Conclusion

Crop USA had rights in the funds coming directly from Diversified and representing commissions owed to Church Crop, and it could legally pledge these

payments as security. Therefore, we reverse the district court's grant of declaratory judgment and remand for further proceedings.

**REVERSED AND REMANDED.**